CLINE v. BYRNE DOORS, INC.

1. WORKMEN'S COMPENSATION—OUT-OF-STATE INJURY.
     Whether or not an employee who is injured without this State is entitled to compensation under the workmen's compensation act of this State is dependent upon whether he was employed by virtue of a contract of hire made in this State (3 Comp. Laws 1948, § 413.19).

2. SAME—MICHIGAN CONTRACT OF EMPLOYMENT—OUT-OF-STATE IN-JURY—JURISDICTION OF COMMISSION.
     Where plaintiff was employed by defendant corporation in this State and did work in this State before leaving for Florida, in which State he was injured while working for defendant, it was within the jurisdiction of the Michigan workmen's compensation commission to award compensation, the mere fact that his wages were agreed upon while defendant's superintendent was in Florida not establishing that the contract was a Florida contract.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5] 58 Am. Jur., Workmen's Compensation, §§ 36, 37, 70, 72.
[1, 2, 5] Extraterritorial operation of workmen's compensation statutes; conflict of laws. 3 A.L.R. 1351, 18 A.L.R. 292, 28 A.L.R. 1345, 35 A.L.R. 1414, 45 A.L.R. 1234, 59 A.L.R. 735, 82 A.L.R. 709, and 90 A.L.R. 119.
[3] 58 Am. Jur., Workmen's Compensation, § 69.
[4, 7, 10] 58 Am. Jur., Workmen's Compensation, §§ 306, 492.
[4, 7, 10] Right to compensation under workmen's compensation act as affected by pension, insurance, gratuities, or other benefits not derived from the act itself. 119 A.L.R. 920.
[4, 7, 10] Award under workmen's compensation act as bar to, or ground for reduction of, claim under act of another State. 101 A.L.R. 1445, 150 A.L.R. 431 and 169 A.L.R. 1185.

3. SAME—INJURY WITHIN THIS STATE.

An employee who is injured within this State while working for an employer under the workmen's compensation act is entitled to compensation regardless of where the contract of hire was made.

4. SAME—RIGHT TO COMPENSATION—INJURY WITHOUT STATE—STATUTES—COMMON LAW.

Whether or not a Michigan resident, employed in this State by defendant Michigan corporation, who was injured in Florida while working for defendant and who accepted benefits under the Florida law was barred thereby from the right to compensation in this State under the Michigan act depends upon the provisions of statute, not upon common-law right of recovery of damages for tort, depending upon the situs of the tort and the *lex loci delictus.*

5. SAME—OUT-OF-STATE INJURIES—DUE PROCESS.

Where a contract of employment is made in one State for work in another jurisdiction, if the State where employment contract is made has a legitimate public interest of its own to insure that the workman be compensated for injuries suffered in employment beyond its borders, the due process clause of the Fourteenth Amendment does not prevent allowance of compensation.

6. SAME—FULL FAITH AND CREDIT—VOLUNTARY PAYMENTS OF COMPENSATION.

While a judgment in tort or in contract is not immune from the requirement of full faith and credit because the successful plaintiff could have maintained his suit under the law of other States, the full faith and credit provision does not apply as to voluntary payments of workmen's compensation made under the law of one State without an agreement or adjudication by the industrial commission of that State.

7. SAME—FULL FAITH AND CREDIT—MEDICAL, SURGICAL AND HOSPITAL EXPENSES—WEEKLY COMPENSATION.

The Michigan workmen's compensation commission is not required to recognize and give full faith and credit to an order of the Florida compensation commission to plaintiff's employer to pay plaintiff additional medical, surgical and hospital care in a proceeding in this State to obtain an award of weekly payment of compensation (Florida Stat. Ann. 1947 Cum. Supp. § 440.13[3a]; 3 Comp. Laws 1948, §§ 412.4, 413.19).

8. Same—Finding of Commission—Evidence.
    Finding of workmen's compensation commission that plaintiff, injured in Florida, was a Michigan resident working for a Michigan employer under a contract of hire made in this State *held,* supported by testimony.

9. Same—Out-of-State Injury—Credit for Payments of Compensation Received—Questions Reviewable.
    Whether or not a Michigan employee of a Michigan employer would be required to credit latter for amount of compensation paid under Florida law for injury sustained in that State is not determined where the question was not raised by either party in the Supreme Court nor before the deputy or the workmen's compensation commission, is not necessary to determination of question of statutory construction involved and a different insurance carrier covered the risk in Florida than in Michigan.

10. Same—Benefits from Other Sources.
    Whether or not payments of compensation, received in another State for injuries received in such other State, will be credited toward an award of compensation made by workmen's compensation commission of this State for same injuries is a question involving a construction of the provision of the Michigan workmen's compensation act relative to consideration of benefits from other sources in fixing award (3 Comp. Laws 1948, § 412.13).

Appeal from Department of Labor and Industry. Submitted January 14, 1949. (Docket No. 48, Calendar No. 44,033.) Decided May 18, 1949.

Clyde R. Cline presented his claim against Byrne Doors, Inc., employer, and Michigan Mutual Liability Company, insurer, for compensation for injuries sustained while in its employ. Award to plaintiff. Defendants appeal. Affirmed.

*Russell J. Comer* and *Floyd T. Schermerhorn,* for plaintiff.

*L. J. Carey* and *Geo. J. Cooper,* for defendants.

BOYLES, J. On leave granted, the defendants appeal from an order of the workmen's compensation commission granting compensation to the plaintiff.

Plaintiff was, at the time of his injury, and still is, a resident of this State. His employment by the defendant Byrne Doors, Inc., first began in 1943, but has not since been continuous. His work, conceded to be skilled employment, was as a foreman or erection superintendent on construction projects, installing equipment for the defendant company. His first job, in 1943, was at the municipal airport in Cleveland, Ohio, in connection with the building of a bomber plant. He worked there for the defendant company about six months. He next worked for the defendant company at the Ford bomber plant in this State, then in Lafayette, Indiana; Buffalo, New York; and Dayton, Ohio. In 1944, he was laid off for 4 or 5 months. In 1945, he received a letter from one Mr. Joyce, a superintendent of construction for the defendant Byrne Doors, Inc., who was then in Washington, D. C., offering him a job in Florida. Plaintiff's testimony at the hearing before the deputy is not controverted. He testified:

"*Q.* And you received that letter in Lincoln Park?

"*A.* Yes, at my home, and he was in Washington at that time and stated that he had that job. It was quite a complicated affair in Florida and—he had been offered it, rather, and he wouldn't take it unless I would assist him on the job, so I wrote him back at Miami, Florida—he gave me his address to write him—and told him that I would accept the job.

"*Q.* You told him that you would accept the job. Who did you see in the David Stott building (in Detroit)? * * *

"*A.* I went into the office. Mr. Kemph, he is erection superintendent and Mr. Gartrell, assistant—

"*Q. By Mr. Comer* (attorney for plaintiff): What date was that, witness?

"*A.* About March, 1945. I had taken the plans and [he] gave me money to go on and some little hand tools, incidental tools, electrical equipment, in my car to Florida, but I left my home and came to the David Stott building and picked up the money and blueprints, timekeeping paraphernalia, payrolls, weekly payrolls and left for Florida. I didn't go home from the David Stott building. I went straight to Florida. That was the latter part of March of '45.

"*Q.* Who did you consult with at the David Stott building?

"*A.* Kemph and Johnny Gartrell.

"*Q.* Who is he?

"*A.* He is assistant erection superintendent of Byrne Doors. That would be in charge of all the work that Byrne Doors had. .

"*Q.* What were the details of your conversation there with him?

"*A.* He just told me to go to Florida and go to work. * * *

"*Q. By Mr. Comer:* Had you received a pay check previous to the time you went to the David Stott building? * * *

"*A.* I was paid with a check the morning I left to go to Florida. * * *

"*Q.* All right, up to the time you went to the David Stott building, before that date, did you receive any compensation from Byrne Doors? * * *

"*A.* No, I worked four days out on Epworth boulevard getting out the tools and equipment to do the job with and shipped them to Florida. I came into the David Stott building and got my check that same day that I left for Florida and $250 incidental expense money to pay my hotels, my meals, and to pay my own self my wages. I carried my own time up until the time that Mr. Joyce came and taken over. I paid myself out of the company money and mailed them a weekly statement and a daily progress report of what I was doing and how I was doing it, but I had the money in my pocket to pay myself. I just mailed them a statement of how much money I had taken out and how much money I still had. * * *

"*The Commissioner:* What agreement did you have— * * *

"*A.* I was just told to go to Florida. I didn't have any agreement. They just gave me the plans and the address and whom it was for and some incidental tools and equipment and $250, and said, 'Get down to Florida,' and I got right in my car and drove right to Florida. * * *

"*Q. By Mr. Comer:* Who did you make those agreements with, Mr. Cline?

"*A.* With Mr. Gartrell.

"*Q.* Whereabouts?

"*A.* David Stott building.

"*Q.* Did you discuss the question of wages with him?

"*A.* No.

"*Q.* With whom did you determine that question?

"*A.* Cy Joyce.

"*Q.* Where was he when you talked about that?

"*A.* That was by mail.

"*Q.* By mail from where?

"*A.* Miami, Florida.

"*Q.* From Miami. He was the superintendent of the company? * * *

"*A.* This was by mail. He wrote me from Washington, D. C., asking me if I would act as his assistant on the job. If I wouldn't act as his assistant, he wouldn't accept the job, but if I would assist him in it, he would accept the job, and I wrote him to Miami that I would provided he would pay my expenses, and I believe that was a guaranty of $100 a week and if I worked hours over and beyond that at $2.07½ wage scale, I was to get that, but guaranteed $100 flat whatever we did.

"*Q. By Mr. Comer:* When you worked for Byrne Doors previous to that occasion, how were you paid? By cash or check?

"*A.* By cash. * * *

"*Q.* At all times?

"*A.* Oh, yes. That is the policy of the company. * * *

"*Q.* With reference to your being hired by the Byrne Doors, Incorporated, were you in the State of Michigan at all times where these telephone conversations, letters and other conversations—

"*A.* Oh, yes, at the time I left for work, I always left from Michigan to go wherever they had work. They sent me over there. I was told to go to Buffalo by Johnny Gartrell and I was told to go to Lafayette, Indiana, by Mr. Kemph. I was told to go to Florida by Gartrell.

"*Q.* All right. Now, then, after March of 1945, you left to go to Florida?

"*A.* Yes.

"*Q.* What was the nature of your work?

"*A.* Well, building a door for—I don't know just what you would call it. I believe they call it a climatic hangar. It was a hangar they could heat up or freeze up, whichever way they wanted to. It operated from 75 below zero to 150 above.

"*Q.* Where did you work in Florida?

"*A.* Eglin Field * * * Army air force proving ground.

"*Q.* When you went down there what took place?

"*A.* I reported to Major Littlefield as a representative of Byrne Doors. There was no one else on the job at that time, and I discussed the plans of how we were to get started and they were very anxious that we get started. Didn't have any material on the job to get started with, so we started laying railroad track, I believe, a couple of days after that.

"*Q.* That was the first individual you contacted?

"*A.* Yes. I was there two days and Joyce came in and he was officially in charge of the job.

"*Q.* In what respect was he officially in charge of the job?

"*A.* Superintendent. * * *

"*Q.* From the date that you first appeared on that field and started to work there up until the time that you were injured, did you consult any other person in Florida concerning your employment?

"*A.* No. No. I talked to Mr. Kemph over the telephone from Detroit.

"*Q.* Who is that?

"*A.* Erection superintendent.

"*Q.* Of Byrne Doors?

"*A.* Yes, sir.  He sent me to Brunswick, Georgia. At that time we had completely run out of material, he sent me to Brunswick.  *  *  *

"*Q. By Mr. Comer:* Now, then, you continued working there at the field for Byrne Doors until the date of your injury?

"*A.* Well, I worked for Byrne Doors all the while. I didn't work for anyone else.  I left there and went to Brunswick for two weeks and came back to the same job, Eglin Field, again, but I worked for Byrne Doors all the time."

While he was working on the job in Florida, plaintiff's right leg was crushed and fractured by the fall of some steel.  He was voluntarily paid weekly compensation benefits by the insurance carrier for the defendant Byrne Doors, Inc., in accordance with the Florida law, and was also paid additional medical, surgical and hospital care by the said insurance carrier under an order made by the Florida industrial commission, under the Florida statute law.

Subsequently plaintiff filed the petition in the instant matter, with the Michigan department of labor and industry, for compensation for disability arising out of said personal injury in Florida.  As hereinbefore stated, the workmen's compensation commission entered an order granting compensation, from which the defendants appeal.  Two questions are raised by appellants as grounds for reversal and for setting aside the award.

1. *Was plaintiff employed under a contract of hire made in this State?*  The statute (2 Comp. Laws 1929, § 8458* [Stat. Ann. § 17.193]) under which the compensation commission assumed jurisdiction to make said award is as follows:

---

* 3 Comp. Laws 1948, § 413.19.—REPORTER.

"The industrial accident board * shall have jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this State, in those cases where the injured employee is a resident of this State at the time of the injury, and the contract of hire was made in this State, and any such employee or his dependents shall be entitled to the compensation or death benefits provided by this act."

Appellants claim that this provision of the act is not applicable because the contract of hire was not made in this State. Under the provisions in the Michigan statute on which plaintiff relies, his right to compensation depends on whether he was employed by virtue of a contract of hire made in this State.

Plaintiff was an employee of the defendant Byrne Doors, Inc., not an employee of its superintendent Mr. Joyce; he was hired in the David Stott building in Detroit by said defendants' authorized agents, and did work under that employment in Detroit before he left for Florida. He received his first payment in Detroit, the contract of employment was between a Michigan resident and a Michigan corporation. The mere fact that plaintiff's wages were agreed upon by defendants' superintendent Joyce while Joyce was in Florida does not establish that plaintiff's contract of employment was a Florida contract. The Michigan workmen's compensation commission acted within its statutory powers in granting the award. *Crane v. Leonard, Crossette & Riley*, 214 Mich. 218 (18 A. L. R. 285, 20 N. C. C. A. 621).

2. *Does the acceptance by the plaintiff of benefits under the Florida law bar him from the right to compensation in this State under the Michigan act?*

---

* The powers and duties of the industrial accident board, here referred to, are now vested in the workmen's compensation commission created by Act No. 357, Pub. Acts 1947. See 3 Comp. Laws 1948, § 408.6 (Stat. Ann. 1947 Cum. Supp. § 17.6[6]).—REPORTER.

While we are not here concerned with the validity of the action of the Florida industrial commission in awarding benefits to plaintiff, it is significant to note that if conditions had been reversed, and the plaintiff, a resident of Florida, had been injured in Michigan while working in this State for an employer under the Michigan workmen's compensation act, he would be entitled to compensation in this State, regardless of where the contract of hire had been made. *Conover* v. *Rust Engineering Co.*, 279 Mich. 16.

The answer to the above question depends upon the provisions of the statute law, and not upon the common-law right of recovery of damages for tort, depending upon the situs of the tort and the *lex loci delicti;* and cases cited by appellants in that regard do not control.

"Where a contract of employment is made in a State, though for work in another jurisdiction and though the parties expressly stipulate to be bound by the workmen's compensation law of that other jurisdiction, if the State where it is made has a legitimate public interest of its own to insure that the workman shall be compensated for injuries suffered in the course of his employment beyond its borders, it is not prevented by the due process clause of the Fourteenth Amendment from allowing him its own compensation remedy for such injuries and from declining to remit him to his remedy in the other jurisdiction or to substitute that remedy in its own forum. *Cf. Bradford Electric Light Co., Inc.*, v. *Clapper,* 286 U. S. 145 (52 Sup. Ct. 571, 76 L. Ed. 1026, 82 A. L. R. 696), pp. 540, 542. * * *

"A conflict thus arising is to be resolved, not by automatically compelling the courts of each State to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and determining the question accordingly. P. 547." *Alaska Packers Association* v. *Industrial Accident Commission of California* (syllabi), 294 U. S. 532 (55 Sup. Ct. 518, 79 L. Ed. 1044).

Appellants rely on *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430 (64 Sup. Ct. 208, 88 L. Ed. 149, 150 A. L. R. 413, 15 N. C. C. A. [N. S.] 529). The situation in that case is not the same as in the case at bar. In that case Hunt, a resident in Louisiana, was employed by the plaintiff petroleum company under a contract of employment entered into in Louisiana. His employment occasioned his going to Texas where he was injured by a falling drill stem. He sought and secured in Texas an award of *compensation* under the Texas compensation act, which award became final within the provisions of the Texas statute. Hunt subsequently initiated proceedings in Louisiana to recover compensation under the Louisiana's workmen's compensation act, which action was resisted by the employer on the ground that recovery sought was barred by the Texas award which, by virtue of constitutional command, was entitled to full faith and credit in the Louisiana courts. The United States supreme court, in a five-four decision, held that the award of *compensation* by the Texas commission was *res judicata,* entitled to full faith and credit in Louisiana, and barred Hunt from receiving *compensation* in that State. The majority of the court, treating the award of compensation as a judgment, at page 445, said:

"A judgment in tort or in contract is not immune from the requirement of full faith and credit because the successful plaintiff could have maintained his suit under the law of other States."

The situation in the case at bar is different. In Florida plaintiff was *voluntarily* paid weekly *compensation* by the insurance carrier for the defendant Byrne Doors, Inc., without an agreement or adjudication by the Florida industrial commission. Under the Florida law, the total charge against an employer for *medical, surgical and hospital care* shall not

exceed $1,000, "provided, however, that if the nature of the injury or the process of recovery requires *medical, surgical, hospital, and other attendance or remedial treatment,* in addition to the $1,000 allowed, the industrial commission may on its own initiative or upon the application of any party in interest, order the employer or insurance carrier to furnish such additional treatment as the nature of the injury or the process of recovery may require." Florida workmen's compensation act, § 13, subd. 3(a).*

On December 15, 1945, in pursuance of said section, the Florida industrial commission entered an order directing the defendant to furnish further and additional *medical, surgical and hospital care* to the plaintiff.

Michigan has a similar provision in its workmen's compensation law requiring the employer to furnish medical, surgical and hospital care. Act No. 10, pt. 2, § 4, Pub. Acts 1912 (1st Ex. Sess.), as last amended by Act No. 325, Pub. Acts 1945 † (Comp. Laws Supp. 1945, § 8420, Stat. Ann. 1947 Cum. Supp. § 17.154).

However, the plaintiff is not here seeking payment for medical, surgical and hospital care. He seeks an award for workmen's *compensation,* the amount of which weekly compensation is fixed by the Michigan act. In that respect the instant proceeding differs from the action taken by the Florida commission, where no award of *compensation* was made. There is no constitutional requirement that the Michigan commission be required to recognize and give full faith and credit to the order of the Florida commission for a different recovery. The *Magnolia Petroleum Case,* while barring an award of *compensation* by the Louisiana commission after an award of *compensation* for the same disability had been

---

* Florida Stat. Ann. 1947 Cum. Supp. § 440.13(3a).—REPORTER.
† 3 Comp. Laws 1948, § 412.4.—REPORTER.

made by the Texas commission, does not apply to the case at bar. This viewpoint is strengthened by the more recent unanimous decision of the United States supreme court in *Industrial Commission of Wisconsin* v. *McCartin*, 330 U. S. 622 (67 Sup. Ct. 886, 91 L. Ed. 1140, 169 A. L. R. 1179), where it was held that one Kopp, a resident of Illinois, who was injured in Wisconsin while working there under an Illinois contract of employment, for a resident of Illinois, was not barred from obtaining compensation in Wisconsin under the law of that State, although the Illinois commission had made a formal order approving a settlement of compensation under the law of that State. The opinion indicates that the workmen's compensation laws of Illinois are the same as those in this State on the essential points involved. In the above case the court held (syllabi):

"An employee was injured in Wisconsin while working under an Illinois contract of employment and while both he and his employer were residents of Illinois. He applied to the Wisconsin industrial commission for adjustment of claim and shortly thereafter applied to the Illinois industrial commission, stating that the general nature of the dispute was, 'Whether Illinois or Wisconsin has jurisdiction in my case.' A settlement contract expressly reserving any right the employee 'may have' under the Wisconsin act was filed with the Illinois commission, which approved it and issued a formal settlement order. After full payment of the amount awarded in Illinois had been made, the Wisconsin commission awarded the employee certain benefits, less the amount received under the Illinois award. *Held:* The Illinois award is final and conclusive only as to rights arising in Illinois, and Wisconsin is free under the full faith and credit clause to award additional compensation in accord with its own laws. *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430 (64

Sup. Ct. 208, 88 L. Ed. 149, 150 A. L. R. 413), distinguished. Pp. 626–630.

"(a) The fact that the Illinois statute expressly applies to persons whose employment is outside the State (where the contract of employment is made in Illinois) and precludes recovery under any 'common law or statutory right' did not preclude recovery under the Wisconsin statute, because the Illinois statute had been interpreted by the supreme court of Illinois as abolishing rights of action against the employer under the Illinois common law or under the Illinois personal injuries act and contained nothing to indicate that it was completely exclusive or was designed to preclude any recovery under proceedings in another State for injuries received there in the course of an Illinois employment. Pp. 627, 628.

"(b) The provision in the settlement contract saving the rights of the employee in Wisconsin became a part of the Illinois award, which had become final. Therefore, the Illinois award did not foreclose an additional award under the laws of Wisconsin. Pp. 628–630."

In the instant case the workmen's compensation commission found that plaintiff was a Michigan resident working for a Michigan employer under a contract of hire made in this State. There is testimony to support the finding and it is affirmed. The commission also decided that the action taken in Florida does not prevent the granting of compensation to plaintiff in this State because of the full faith and credit clause of the United States Constitution. In that regard the commission reached the right result.

Appellee's brief now attempts, indirectly, to inject into this appeal the question whether the plaintiff, if ultimately allowed compensation, should be required to credit the defendants with the amount of compensation paid to him in Florida under the Flor-

ida statute law. This question has not been properly raised by either the appellants or the appellee in this Court, has not been briefed by the appellants, and was not raised before the deputy or the commission. It is not essential to decision here, on the questions before us. On this question, decision involves the construction of a part of the Michigan workmen's compensation law.* Furthermore, the record shows that the defendant Michigan Mutual Liability Company, the insurance carrier covering the liability of Byrne Doors, Inc., in this State under the Michigan statute, is not the same liability insurer—the Aetna Insurance Company—that paid compensation to plaintiff in Florida under the laws of that State. Under these circumstances, we do not decide whether the decisions in other jurisdictions, or the rule in Restatement of the Conflict of Laws, § 403, as referred to by Mr Justice BUTZEL in a concurring opinion, are controlling under the statute law of this State.

The order of the commission reversing the order of the deputy denying compensation is affirmed and the case remanded for further proceedings in accordance therewith.

SHARPE, C. J., and BUSHNELL, NORTH, DETHMERS, and CARR, JJ., concurred with BOYLES, J.

BUTZEL, J. (*concurring in part*). I am in accord with Mr. Justice BOYLES' opinion wherein he holds that the Michigan workmen's compensation commission had jurisdiction to hear the case on its merits and enter an award. The amount of the award and the method of computation has not yet been determined as this is an appeal from an order of the full

---

* Act No. 10, pt. 2, § 13, Pub. Acts 1912 (1st Ex. Sess.), as amended by Act No. 173, Pub. Acts 1921 (2 Comp. Laws 1929, § 8429, 3 Comp. Laws 1948, § 412.13 [Stat. Ann. § 17.163]).

commission reversing the dismissal by the deputy commissioner and remanding it to the deputy for a hearing on the merits. Plaintiff in his brief, however, claims that he is entitled to the full amount of compensation provided for by the laws of this State without any deduction for the amount allowed and paid him under the Florida law. This, according to the weight of authority, he is not entitled to. Though the question is only indirectly before the Court on this appeal, as the case is remanded for the entering of an award, the following should be added to the foregoing opinion to prevent error on the rehearing.

The payments made to plaintiff under the Florida law were not voluntary although they were made without a formal award by the Florida commission. They were made strictly in accordance with the Florida law which provides for payments to be made without an award. Florida Statutes 1941, § 440.20, as amended in Laws of 1941, chap. 20672,* states:

"(a) Compensation under this chapter shall be paid periodically, promptly in the usual manner and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer."

The statute further provides penalties for not making such payments, the method of reporting the payments made, procedure in filing notice to contovert the liability, and the procedure in conducting hearings on such questions and the entering of an award. If the payments had not been made promptly under the law, the employer or insurance carrier was subject to penalties, and if they contested the liability and lost they would be assessed the cost of the hearing as well as the attorneys' fees of the employee.

---

* See Florida Statutes Annotated, § 440.20.—REPORTER.

· ·Prior to the decision in the case of *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430 (64 Sup. Ct. 208, 88 L. Ed. 149, 150 A. L. R. 413, 15 N. C. C. A. [N. S.] 529), the weight of authority was represented by the rule stated in Restatement, Conflict of Laws, § 403, as follows:

"Award already had under the workmen's compensation act of another State will not bar a proceeding under an applicable act, but the amount paid on a prior award in another State will be credited on the second award."

Though the decision in the *Magnolia Case, supra,* seemed to overrule this prior authority, as set forth in Mr. Justice BOYLES' opinion, it was modified and distinguished by the later case of *Industrial Commission of Wisconsin* v. *McCartin,* 330 U. S. 622 (67 Sup. Ct. 886, 91 L. Ed. 1140, 169 A. L. R. 1179), and is not applicable here. The opinion in the *McCartin Case* is based partly upon the fact that in the first award in the State where the employee was hired there was an express proviso that it should not affect an award in the State where the injury occurred. However, the opinion also held that the finality of an award under compensation acts depends on the statutes involved and neither those of Michigan or Florida contain any provisions that an award in one of the States shall be exclusive of an additional award in the other State.

The *McCartin Case* did not hold that credit should not be given for amounts paid as compensation under the laws of another State. It remanded the case to the Wisconsin courts to award compensation in accordance with its laws. The history of the *McCartin Case* and the prior cases in Wisconsin is set out in *Industrial Indemnity Exchange* v. *Industrial Accident Commission,* 80 Cal. App. (2d) 480 (182 Pac. [2d] 309), hereinafter discussed. It is shown

that in all prior decisions in Wisconsin the rule of the restatement was followed and credit was given for payments made under any prior award in another State in the award made in Wisconsin. After the decision in the *Magnolia Case,* by the United States supreme court, the Wisconsin court had held in the *McCartin Case* that there could not be a second award. However, on appeal, the United States supreme court, reversing the Wisconsin court, held that the first award was final and conclusive only as to the rights arising in the first State in which an award had been granted and that Wisconsin was free under the full faith and credit clause to grant an award for compensation *in accord with its own laws.* Thus Wisconsin found itself in the same position where it was prior to the decisions in both the *Magnolia* and *McCartin Cases.* The later case of *Spietz, d. b. a. Monarch Painting Service,* v. *Industrial Commission,* 251 Wis. 168 (28 N. W. [2d] 354), decided after the decision of the United States supreme court, follows section 403, Restatement, Conflict of Laws. It upheld an award of the industrial commission of Wisconsin the State where the claimant was hired. The commission deducted all sums previously paid under an award in Montana where claimant was injured.

In the last analysis, there is only one claimant, one employer and one accident. The courts have held that it is neither within the meaning or the spirit of the act to allow double compensation by refusing to give credit for compensation paid for the same accident by the same employer or his insurer to the same employee in the making of a second award. *Industrial Indemnity Exchange* v. *Industrial Accident Commission, supra,* decided after the *McCartin Case,* involved facts very similar to those in the present case. In a complete and able discussion of the law the California court held that

the commission in California, the State of hiring, had jurisdiction to enter an award under its laws even though the injured employee had accepted payments in Utah, the State where the injury occurred, without a formal award under the laws of Utah. The California court held that these were payments of compensation and must be credited against any award made in California. We adopt this decision as a correct statement of the law and cite hereinafter many of the authorities relied on by the California court in reaching its decision.

The purpose of the compensation acts is to provide a method by which an injured employee receives compensation for his injuries promptly and without delay of legal procedure. Not to give credit for payments made under the law of a foreign State having jurisdiction as here would defeat this purpose. It is stated in 1 Schneider's Workmen's Compensation (Perm. Ed.), § 160, page 469:

"Dual recovery for the same injury is generally not permitted where the compensation act of more than one State is properly applicable and the claimant's rights under each of the acts is invoked. There is some authority to the contrary, as will be noted hereinafter. It is not unusual to allow a second recovery after an award has been made or compensation has been paid under the law of another State. But when the second award has been made, the commissions and courts have generally required that credit be given for the compensation paid or awarded under the law of the other State.

"To allow double recovery is contrary to one of the fundamental principles of workmen's compensation, in that if the employee were to receive more compensation while disabled than while working, the temptation to malinger and prolong his period of disability would be unwisely increased. In addition this would be penalizing the employer for his industry in extending his business to other States, not to

mention questions of interstate comity or *res judicata*. The author prefers in such cases the theory of concurrent jurisdiction and one recovery or credit for others."

To like effect see *McLaughlin's Case,* 274 Mass. 217 (174 N. E. 338); *Migues' Case,* 281 Mass. 373 (183 N. E. 847); *Mizrahi's Case,* 320 Mass. 733 (71 N. E. [2d] 383); and *Gilbert* v. *Des Lauriers Column Mould Co., Inc.,* 180 App. Div. 59 (167 N. Y. Supp. 274). In Horovitz on Workmen's Compensation, p. 41, in considering the effect of the *Magnolia Case* and the expected efforts that would be made to limit it, it is stated that sufficient faith and credit are given to the first award where the entire amount is deductible from the second award.

We believe the rule as stated by these authorities is the proper one. It gives full faith and credit to the award or payments made under the laws of a sister State by applying the amount of the award or payments received on any further award made in the State where the employee had been originally hired.

The order of the workmen's compensation commission is affirmed and the case should be remanded in accordance with this opinion. Costs to plaintiff.

REID, J., concurred with BUTZEL, J.