KELLY, J.
(dissenting). Today the majority adds to its exponentially growing list of overturned precedents.[1] The well-reasoned decision of Roberts v I X L Glass *47 Corp[2] has been the law of this state for the past 74 years. In 1993, this Court revisited the reasoning of Roberts in Boyd v W G Wade Shows,[3] affirmed the decision, and rejected many of the same arguments that the majority makes today. Nothing has changed since this Court’s decision in Boyd other than the makeup of the Court. At no time has the Legislature taken steps to reenact or amend any precursor to, or the current version of, MCL 418.845 in response to this Court’s decisions in Roberts or Boyd. Because I believe that in those cases this Court properly effectuated the Legislature’s intent when enacting § 845, I must disagree with the decision to overrule Boyd.
I. MCL 418.845, ROBERTS, AND BOYD
The sole question here is whether appellants’ proposed overruling of Boyd is justified under the standard for departing from the rule of stare decisis discussed in Robinson v Detroit, 462 Mich 439; 613 NW2d 307 (2000).
The statute at the heart of this question is MCL 418.845, which provides:
The bureau shall have jurisdiction over all controversies arising out of injuries suffered outside this state where the injured employee is a resident of this state at the time of injury and the contract of hire was made in this state. Such employee or his dependents shall be entitled to the compensation and other benefits provided by this act.
The landmark case interpreting the precursor to § 845[4] is Roberts. The question presented in Roberts was:
*48 [W]hether an employee whose contract for employment is entered into in Michigan with a resident employer who is under the workmen’s compensation act... for services to be rendered wholly outside of the State of Michigan is within the terms of the act so that, if otherwise entitled thereto, he may be awarded compensation notwithstanding the accident occurred in another State and that the employee was at no time a resident of Michigan. Roberts v I X L Glass Corp, 259 Mich 644, 644-645; 244 NW2d 188 (1932).]
Like the appellants here, the appellants in Roberts contended that the residency requirement of the precursor to § 845 constituted a limitation on the jurisdiction of the Industrial Accident Board. Id. at 647. However, the Roberts Court concluded that the Legislature could not have intended such a result. Among other things, the residency requirement was embodied in the procedural part of the act, not in the part that defines and fixes the rights and liabilities of employers and employees. Id.
Additionally, the Roberts Court pointed out that part III, § 19 conflicted with § 6 of the act.[5] ***5 The Court stated that § 6 allowed that the act protected “all employees” *49 regardless of the residence of the employee or the locus of the accident. Roberts, 259 Mich at 647. Section 7 defined “employee” as “[e]very person in the service of another under any contract of hire . . . .” 1929 CL 8413. This section was in full harmony with § 6. Roberts, 259 Mich at 648.
Moreover, the Roberts Court reasoned that, as a matter of legislative policy, it would be “inconsistent... to deny compensation to an injured employee on the ground that he was a nonresident, but in case of fatal injury to award compensation to his dependents regardless of residence or citizenship.” Id. Therefore, it concluded, the “reasonable construction and the one necessary to carry out the legislative intent appearing from the whole act is that it covers nonresident as well as resident employees in those cases wherein the contract of employment is entered into in this State with a resident employer.” Id. at 648-649. The Roberts Court added that its construction was in accord with the “humane purposes” of the act. Id. at 649.
Nearly 61 years later, in Boyd, this Court revisited the reasoning and holding of Roberts. In that case, the employee was an Illinois resident who entered into a contract of employment in Michigan and was injured on the job in Indiana. Boyd v W G Wade Shows, 443 Mich 515, 516; 505 NW2d 544 (1993). The Court determined that the Bureau of Workers’ Disability Compensation had jurisdiction to award benefits under the Worker’s Disability Compensation Act (WDCA). MCL 418.101 et seq. It noted that Roberts was the landmark case that interpreted an earlier version of § 845 and set forth the rule of law regarding extraterritoriality. Id. at 517-518.
The Boyd Court noted that, although the Court of Appeals had reaffirmed the holding and reasoning of *50 Roberts in Austin v W Biddle Walker Co,[6] the Court of Appeals had begun to interpret § 845 in contravention of Roberts. Id. at 521-522, citing Wolf v Ethyl Corp, 124 Mich App 368; 335 NW2d 42 (1983), and Hall v Chrysler Corp, 172 Mich App 670; 432 NW2d 398 (1988). Boyd expressly rejected the Court of Appeals reasoning in those cases that, because Roberts had been decided at a time when the act was elective, Roberts was no longer valid. Boyd, 443 Mich at 522-523.
Specifically, Boyd noted that “[t]he fact that the act became compulsory subsequent to Roberts is irrelevant; the requirements of § 845 have remained intact.” Id. at 523. Moreover, the Court wrote, “it is the Supreme Court’s obligation to overrule or modify case law if it becomes obsolete, and until this Court takes such action, the Court of Appeals and all lower courts are bound by that authority.... Because this Court has never overruled Roberts, it remains valid precedent.” Id. at 523.
Boyd also noted that, if Roberts were overruled, a “significant gap” in coverage would exist in Michigan’s workers’ compensation scheme. Id. Specifically, it opined, all Michigan employees who suffer an out-of-state injury in the course of their employment and who reside in neighboring states would not he entitled to benefits. Id. at 523-524. This Court determined that Roberts remained “an effective means of retaining a fair and consistent scheme for extraterritorial jurisdiction.” Id. at 524.
Moreover, Boyd observed that, by that time, the Legislature had acquiesced for 60 years in extraterritorial jurisdiction as expressed in Roberts. Id. at 525. Following in the Legislature’s footsteps, Boyd declined to disturb the Roberts interpretation. Accordingly, the Boyd Court concluded that “the Bureau of Workers’ *51 Disability Compensation shall have jurisdiction over extraterritorial injuries without regard to the employee’s residence, provided the contract of employment was entered into in this state with a resident employer.” Id. at 526.
II. THE ROBINSON FACTORS
In its decision today, the Court overrules Boyd. The same four justices who signed the majority opinion signed Robinson in 2000. In it, they set forth the factors to consider in overruling a decision while giving deference to the doctrine of stare decisis. Robinson, supra. They indicated that a court must first consider whether the earlier decision was wrongly decided. Robinson, supra at 464. It must also consider whether the decision “defies ‘practical workability,’ whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision.” Id.
With regard to the first Robinson factor, I believe that Boyd was properly decided. The primary goal of statutory interpretation is to give effect to the Legislature’s intent. In re MCI Telecom Complaint, 460 Mich 396, 411; 596 NW2d 164 (1999). In both Roberts and Boyd, this Court identified the intent behind § 845: to provide the workers’ compensation bureau with jurisdiction over extraterritorial injuries without regard to the employee’s residence, provided the employment contract was entered into in Michigan with a resident employer.
The Legislature has never indicated its disapproval of Roberts or Boyd.[7] It has revised the WDCA numerous *52 times since 1932 when Roberts was decided, but it has taken no action that would indicate its disapproval of Roberts. In 1993, this Court reaffirmed the reasoning and holding of Roberts in Boyd. However, the Legislature still has not amended the statute, stated another purpose behind it, or taken any action indicating disapproval of the Roberts and Boyd interpretation of § 845. This lack of legislative correction strongly indicates that Roberts and Boyd properly determined and effectuated the intent behind MCL 418.845. Where this Court has properly interpreted the intent of the Legislature, the primary goal of statutory interpretation has been achieved. In re MCI, 460 Mich at 411.
Justice CORRIGAN’s opinion propounds that the text of MCL 418.845 “is so patently clear that its meaning is truly beyond any reasonable dispute.” Ante at 39. However, the mere fact that the majority does not agree with the Roberts and Boyd interpretation of § 845 does not make the statute “beyond any reasonable dispute.” As I noted in my opinion in Rowland, “[i]t is amazing how often the members of this majority have declared themselves more capable of understanding the law and reaching the ‘right’ result than any justice who sat before.” Rowland, 477 Mich at 256 (KELLY, J., concurring in part and dissenting in part). Moreover, the majority’s suggestion that the Michigan Legislature could not have drafted language indicating its disapproval of the Roberts and Boyd interpretation of § 845 underestimates the ability of our legislators.[8]
*53 In its opinion, the majority again questions the use of legislative acquiescence as a valid judicial tool for statutory interpretation. However, as I noted in Rowland, legislative acquiescence is one of the many judicial tools a court properly uses when attempting to effectuate the intent of the Legislature. Rowland, 477 Mich at 261 (KELLY, J., concurring in part and dissenting in part). In fact, the use of legislative acquiescence as a recognized judicial tool can be traced to the late nineteenth century. See id. at 260, referring to Douglass v Pike Co, 101 US (11 Otto) 677, 687; 11 Otto 677; 25 L Ed 968 (1880). Significantly, the United States Supreme Court has recently reaffirmed its use:
[T]he claim to adhere to case law is generally powerful once a decision has settled statutory meaning, see Patterson v. McLean Credit Union, 491 U.S. 164, 172-173, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989) (“Considerations of stare decisis have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done”). In this instance, time has enhanced even the usual precedential force[.] [Shepard v United States, 544 US 13, 23; 125 S Ct 1254; 161 L Ed 2d 205 (2005).]
Also, Michigan’s history reveals a consistent and long use of this tool by the courts. See Brown v Manistee Co Rd Comm, 452 Mich 354, 367-368; 550 NW2d 215 (1996), Gordon Sel-Way, Inc v Spence Bros, Inc, 438 Mich 488, 505; 475 NW2d 704 (1991), Craig v Larson, 432 Mich 346, 353; 439 NW2d 899 (1989), Wikman v City of Novi, 413 Mich 617, 638; 322 NW2d 103 (1982), Smith v Detroit, 388 Mich 637, 650; 202 NW2d 300 (1972), Magreta v Ambassador Steel Co, 380 Mich 513, 519-520; 158 NW2d 473 (1967), In re Clayton Estate, 343 Mich 101, 106-107; 72 NW2d 1 (1955), and Twork v Munsing Paper Co, 275 Mich 174, 178; 266 NW 311 (1936).
*54 Accordingly, legislative acquiescence has been and continues to remain a valid tool with which the judiciary can interpret legislative intent. Although the majority of my colleagues has banished legislative acquiescence from its repertoire, I and others on the Court quite appropriately may continue to use it as a judicial tool.
I also believe that Boyd was properly decided for the reason that the public policy concerns that existed when Boyd was decided remain today. As Boyd stated:
If the allegedly “out-dated” Roberts decision is overruled by this Court, then a significant gap in coverage will exist in this state’s compensation scheme. Specifically, all Michigan employees who suffer an out-of-state injury in the course of their employment and who reside in neighboring states will not be subject to the bureau’s jurisdiction. We believe that such a jurisdictional scheme is not only undesirable but also unduly restrictive. [Boyd, 443 Mich at 523-524.]
This concern over the gap in coverage correlates with the general principle that the WDCA, as a remedial statute, is to be liberally construed to grant, rather than deny, benefits. DiBenedetto v West Shore Hosp, 461 Mich 394, 402; 605 NW2d 300 (2000).
The majority contends that Boyd was not properly decided. It reasons that Boyd relied on Roberts and, when the Legislature repealed 1929 CL 8412[9] in 1943, the foundation of Roberts crumbled.[10] This is untrue. *55 As noted above, numerous other factors were considered by the Roberts Court in reaching its decision. Specifically, Roberts noted that the residency requirement was in the procedural part of the act, not in the part that defines and fixes the rights and liabilities of employers and employees. Roberts, 259 Mich at 647.
Moreover, Roberts held that, as a matter of legislative policy, it would be “inconsistent... to deny compensation to an injured employee on the ground that he was a nonresident, but in case of fatal injury to award compensation to his dependents regardless of residence or citizenship.” Id. at 648. Roberts also noted that its construction was in accord with the “humane purposes” of the act. Id. at 649. Therefore, contrary to the majority’s claim, the reasoning in Roberts did not rely solely on the existence of 1929 CL 8412.
The majority also contends that Boyd was not properly decided because Boyd relied on Roberts after the Legislature made the workers’ compensation system mandatory. This argument was asserted before the Boyd Court and rejected. Specifically, Boyd noted that “[t]he fact that the act became compulsory subsequent to Roberts is irrelevant; the requirements of § 845 have remained intact.” Boyd, 443 Mich at 523.
For the reasons stated above, I believe that Boyd was properly decided, hence the first Robinson factor is not satisfied. Robinson, 462 Mich at 464. The Legislature has acquiesced in the Roberts and Boyd interpretation of § 845. This strongly indicates that this Court’s interpretation of this statute properly identified the Legislature’s intent, and Boyd was correctly decided.
The remaining Robinson factors also support affirming Boyd. Those factors are: (1) whether the decision defies “practical workability,” (2) whether reliance interests would work an undue hardship if the authority *56 were overturned, and (3) whether changes in the law or facts make the decision no longer justified. Robinson, 462 Mich at 464.
Roberts and Boyd do not defy practical workability. Rather, the interpretation of § 845 underlying both these cases has been an integral part of Michigan’s workers’ compensation scheme for 74 years.[11] As the Workers’ Compensation Appellate Commission indicated in the instant case, regardless of whether the lower tribunals agreed with Roberts and Boyd, they have applied Roberts or Boyd for decades. Accordingly, there is no practical workability problem.
The next concern is whether reliance interests would work an undue hardship if the authority were overturned. Robinson, 462 Mich at 464. “[T]he Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone’s expectations that to change it would produce not just readjustments, but practical real-world dislocations.” Id. at 466.
Overturning Roberts and Boyd would work an undue hardship. As has been repeatedly noted, the underlying rationale of Roberts, and therefore Boyd, has been in place for over seven decades. It is difficult to imagine a plausible argument that this rationale has not become a fundamental part of the workers’ compensation regime. *57 Indeed, the rationale underlying Roberts and Boyd predates the jurists, litigators, and claimants involved in this case.
For decades, employers have been paying benefits to injured employees in reliance on Roberts and Boyd. Will those employees be required to return their benefits? At oral argument, appellate counsel for appellants suggested that his clients would forgo any attempts to retrieve previously paid benefits. While the appellants here might not seek a refund, there remain many other employers or insurance companies that may not view past benefits paid as “water under the bridge.” Accordingly, it seems incontestable that reliance interests would work an undue hardship if Roberts and Boyd are overturned.
The final Robinson factor is whether changes in the law or facts make the decision no longer justified. Robinson, 462 Mich at 464. The majority attempts to argue that the state of the law regarding the jurisdiction of the Bureau of Workers’ Disability Compensation over extraterritorial injuries has been in a state of flux. However, that argument crumbles under close analysis.
Only two decisions of this Court have thoroughly explored the issues presented in this case: Roberts and Boyd. Because neither had ever before been expressly overruled, both remained good law until now.
The majority relies on Daniels v Trailer Transport Co[12] for the proposition that this Court has previously required that, before the workers’ compensation tribunal can exercise jurisdiction, both subsections of § 845 must be met. The plaintiff in Daniels was an Illinois resident hired by a Michigan employer under a Texas contract of hire. Daniels v Trailer Transport Co, 327 *58 Mich 525, 527; 42 NW2d 828 (1950). He was injured on the job in Tennessee and attempted to obtain benefits under the Michigan workers’ compensation regime. Id. Like the appellants in the instant case, the employer contended that the workers’ compensation commission’s jurisdiction extended only to extraterritorial injuries where the employee resided in Michigan and contracted for employment here. Id. at 529-530.
This Court in Daniels relied on Cline v Byrne Doors, Inc,[13] for the proposition that, “ ‘[u]nder the provisions in the Michigan statute on which plaintiff relies [i.e., the precursor to § 845], his right to compensation depends on whether he was employed by virtue of a contract of hire made in this State.’ ” Daniels, 327 Mich at 530, quoting Cline, 327 Mich at 540. Applying the Cline rationale to the facts in Daniels, this Court concluded that the facts of the case did not bring the plaintiff within the provisions of the act.[14]
Noticeably absent from the reasoning in Daniels was any attempt to distinguish or overrule Roberts. Additionally, Daniels did not specify that the commission had jurisdiction only over extraterritorial injuries of a Michigan resident whose contract of hire was made in Michigan. Rather, the Daniels Court simply noted that Cline required the contract of hire be made in this state. *59 Daniels, 327 Mich at 530. This proposition is consistent with the holding in Roberts.
Moreover, in Austin v W Biddle Walker Co,[15] the Court of Appeals opined that the reasoning in Daniels was consistent with that of Roberts The sole issue before the Court of Appeals in Austin was whether the Michigan Workers’ Compensation Appeal Board had jurisdiction over a nonresident employee injured while working out of state under a Michigan employment contract. Austin v W Biddle Walker Co, 11 Mich App 311, 313; 161 NW2d 150 (1968). Employing the reasoning above, the Court of Appeals in Austin concluded that Daniels and Cline were consistent with Roberts. Id. at 318. It further concluded that Austin was governed by Roberts. Therefore, it opined, the Workers’ Compensation Appeal Board properly exercised jurisdiction, and, to be entitled to benefits, the nonresident claimant had only to be injured while under a Michigan contract of hire. Id. at 313, 318.
The majority also points to another decision by this Court, Crenshaw v Chrysler Corp,[16] to support its proposition that the law after Roberts has been in a state of flux. However, that argument also withers under close analysis.
In Crenshaw, the plaintiff employee was injured while working out-of-state under an Ohio contract of hire. Crenshaw v Chrysler Corp, 394 Mich 513, 515; 232 NW2d 166 (1975). This Court quoted § 845 and italicized the phrase “contract of hire was made in this state.” Id. at 516 n 1. In finding that the out-of-state injuries were not compensable in Michigan, this Court noted that the plaintiff had entered into his contract of hire in Ohio. Id. at 516.
*60 Again, noticeably absent from the reasoning in Crenshaw was any attempt to distinguish or overrule Roberts. This Court in Crenshaw did not specify that the commission had jurisdiction over extraterritorial injuries only if the employee was hired in Michigan and was residing here when injured. Rather, this Court simply implied that, in order to be eligible for benefits, the plaintiff had to have entered into a Michigan contract of hire. This proposition is consistent with Roberts[17]
Therefore, the majority’s claim that two decisions of this Court have called the reasoning of Roberts into question is inaccurate. The two decisions it cites neither explicitly nor implicitly overruled Roberts. Rather, both Daniels and Crenshaw were consistent with Roberts. Accordingly, Roberts was still good law at the time this Court decided Boyd.
The majority also cites numerous Court of Appeals decisions that have questioned the Roberts decision. However, all of them predate Boyd. As this Court noted in Boyd:
[I]t is the Supreme Court’s obligation to overrule or modify case law if it becomes obsolete, and until this Court takes such action, the Court of Appeals and all lower courts are bound by that authority. While the Court of Appeals may properly express its belief that a decision of this Court was wrongly decided or is no longer viable, that conclusion does not excuse the Court of Appeals from applying the decision to the case before it. Because this Court has never overruled Roberts, it remains valid precedent. The rule of *61 law regarding extraterritorial jurisdiction as expressed in Roberts should have been applied by the bureau in the present case. [Boyd, 443 Mich at 523 (internal citations omitted).]
Accordingly, contrary to the majority’s argument, Roberts and Boyd have continued to remain good law until today. In conclusion, none of the Robinson factors supports overruling Boyd.
III. RETROACTIVITY
I agree with Justice WEAVER that the majority’s decision warrants prospective application. Generally, judicial decisions are given full retroactive effect. Pohutski v City of Allen Park, 465 Mich 675, 695; 641 NW2d 219 (2002). But there are well-established exceptions to this rule. The Court should consider the equities involved and, if injustice would result from full retroactivity, should adopt a more flexible approach. Lindsey v Harper Hosp, 455 Mich 56, 68; 564 NW2d 861 (1997). Prospective application is appropriate where the holding overrules settled precedent. Id. As was noted in Pohutski:
This Court adopted from Linkletter v Walker, 381 US 618; 85 S Ct 1731[;] 14 L Ed 2d 601 (1965), three factors to be weighed in determining when a decision should not have retroactive application. Those factors are: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. In the civil context, a plurality of this Court noted that Chevron Oil v Huson, 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971), recognized an additional threshold question whether the decision clearly established a new principle of law. [Pohutski, 465 Mich at 696 (citation omitted).]
It is apparent that the majority in this case states a new rule of law. In fact, it overturns decades of prece *62 dent. And, when a Court overturns precedent interpreting a statute, the decision is equivalent to, and is treated as, a new rule of law. Id. at 696-697.
The first Pohutski factor is the purpose to be served by the new rule. The majority’s purpose in its opinion here is to correct a statutory interpretation that it has found to be incorrect. Both prospective and retroactive application further such a purpose. Id. at 697.
The second factor is the extent of reliance on the old rule. Id. at 696. There are significant reliance concerns implicated by the overturning of Roberts and Boyd. The underlying rationale of these cases has been in place for seven decades. Attorneys, employers, insurance carriers, and various employees have relied on the holdings of Roberts and Boyd. Prospective application acknowledges the extensive reliance placed on the rationale of Roberts and Boyd. Retroactive application does not.
The final Pohutski factor is the effect of retroactivity on the administration of justice. Id. Retroactive application of this case could have serious adverse implications for the administration of justice. Many employees have received benefits in accord with Boyd. Under the majority’s holding, the employees could be called on to give up or repay those benefits. Prospective application would eliminate this harsh result and thus promote the administration of justice.
Accordingly, application of the Pohutski factors strongly indicates a need for prospective application of this decision.
IV CONCLUSION
The majority continues at its unparalleled rate of overturning this Court’s precedent. For the reasons stated above, none of the Robinson factors supports *63 overruling Boyd. It was properly decided. The Legislature has taken no action to show disagreement with the interpretation of MCL 418.845 in Roberts or Boyd. The public policy concerns at issue when Boyd was decided remain unchanged to this day.
Boyd does not defy “practical workability.” Indeed, various workers’ compensation tribunals have been effectively applying Boyd since 1993 and Roberts since 1932. Reliance interests will work an undue hardship once Boyd is overturned because its underlying principles have been enmeshed in Michigan’s workers’ compensation regime for decades. Benefits paid to numerous injured employees in reliance on Roberts and Boyd lie in jeopardy. Finally, no changes exist in the law or facts to justify questioning the Boyd decision. Contrary to the majority’s argument, the holdings of Roberts and Boyd remained good law until today.
Accordingly, for the reasons I stated earlier, giving appropriate deference to the 74-year precedent established in Roberts and upheld by Boyd, I would affirm the judgment of the Court of Appeals. Given that the majority has overruled Boyd and Roberts, the Pohutski factors should be applied to determine whether the new decision should be given retroactive application. Once those factors are weighed, it is obvious that the decision in this case should be applied prospectively.
CAVANAGH, J., concurred with KELLY, J.

 For a more detailed review of the majority’s proclivity at overturning precedent, see my partial dissent in Rowland v Washtenaw Co Rd Comm, 477 Mich 197; 731 NW2d 41 (2007) (Kelly, J., concurring in part and dissenting in part).

 259 Mich 644; 244 NW 188 (1932).

 443 Mich 515; 505 NW2d 544 (1993).

 The precursor to § 845 is found at part III, § 19 of 1921 PA 173. 1929 CL 8458 provided:
*48 The industrial accident board shall have jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this state, in those cases where the injured employee is a resident of this state at the time of the injury, and the contract of hire was made in this state, and any such employee or his dependents shall be entitled to the compensation or death benefits provided by this act.

 Specifically, § 6, 1929 CL 8412, provided:
[S]uch employer accepts the provisions of this act for all his businesses, and to cover and protect all employees employed in any and all of his businesses, including all businesses in which he may engage, and all employees he may employ while he remains under this act....

 11 Mich App 311; 161 NW2d 150 (1968).

 The Legislature is presumed to be aware of judicial interpretations of existing law. Ford Motor Co v Woodhaven, 475 Mich 425, 439; 716 NW2d 247 (2006).

 The majority suggests that I am rewriting the statute to reflect my personal opinions of what the law should be. That is not so. I view it my responsibility as a justice to interpret the law. For the reasons I have stated, I believe that the learned jurists who preceded me on the bench correctly interpreted the intent of the Legislature in writing this statute. Notably, the Legislature has acquiesced in their interpretation of it.

 As noted above in footnote 5, § 8412 referred to § 6 of the act as it existed when Roberts was decided. Specifically, § 8412 provided:
[S]uch employer accepts the provisions of this act for all his businesses, and to cover and protect all employees employed in any and all of his businesses, including all businesses in which he may engage, and all employees he may employ while he remains under this act____

 I would also highlight that, even though the Legislature repealed § 8412 in 1943, it did not repeal or in any way substantively alter § 845.

 Justice Brickley stated in his concurrence in Boyd that even though he believed Roberts was incorrectly decided, he concurred with the majority in Boyd because he agreed with its determination that, “after fifty years of legislative acquiescence, the Roberts decision has become ensconced as part of the overall workers’ compensation scheme.” Boyd, 443 Mich at 527 (Brickley, J., concurring). Justice Brickley’s concern is even more applicable to the instant case because an additional 13 years have passed since Boyd was decided. During that period, the Roberts decision has become even more embedded as part of the overall workers’ compensation scheme.

 327 Mich 525; 42 NW2d 828 (1950).

 324 Mich 540; 37 NW2d 630 (1949).

 The Daniels Court did not explicitly overrule, or even mention, Roberts. Although the facts presented in Cline were not the same as those presented in Daniels, the Court in Daniels did rely on Cline for the proposition quoted above. Daniels, 327 Mich at 530. After quoting Cline, the Daniels Court noted that the contract of hire in that case was made in Texas, whereas the contract of hire in Cline was made in Michigan. Daniels, 327 Mich at 530. Where the contract of hire was not made in Michigan, the Daniels Court concluded that the workers’ compensation commission exceeded its jurisdiction in making the award. Id. This holding is consistent with Roberts and, I believe, reasonable notwithstanding the majority’s contrary view.

 11 Mich App 311; 161 NW2d 150 (1968).

 394 Mich 513; 232 NW2d 166 (1975).

 The majority disagrees with my interpretation of Crenshaw. However, it is undisputed that the Court in Crenshaw did not explicitly overrule, or even mention, Roberts. Rather, the Court noted that the contract of hire in that case was made out of state. It then emphasized, using italics, that the statute required that the contract of hire be made in Michigan in order for the bureau to have jurisdiction. Crenshaw, 394 Mich at 515-516 and 516 n 1. Such a holding is consistent with Roberts.