Mrs. Doney S. LISENBY, Individually and as Tutrix of her Minor Children, Graden Eugene Lisenby, Jo Ann Lisenby and Brenda Ann Lisenby,

v.

E. H. TIBBITS, d/b/a Tibbits Drilling Company, et al.

Civ. A. No. 8606.

United States District Court
W. D. Louisiana,
Monroe Division.

March 7, 1963.

Warren L. Mengis, Baton Rouge, La., Nathan M. Calhoun, Falkenheiner & Calhoun, Vidalia, La., for plaintiff.

Thomas M. Hayes, Jr., Hayes, Harkey & Smith, E. K. Theus, Theus, Grisham, Davis, Leigh & Brown, Monroe, La., G. M. Bodenheimer, Jr., Bodenheimer, Looney & Jones, John M. Shuey, Shuey & Smith, Shreveport, La., Robert T. Farr, Davenport & Farr, Monroe, La., for defendants.

BEN C. DAWKINS, JR., Chief Judge.

Chartor Oil Company (hereinafter Chartor), a Mississippi partnership, organized for the purpose of, and engaged in the search for oil and gas, entered into a contract with E. H. Tibbits, d/b/a Tibbits Drilling Company (hereinafter Tibbits), for the drilling of an oil well in Louisiana. Tibbits sub-contracted with Holmes Cummings, d/b/a Cummings Trucking Company (hereinafter Cummings), and with Odell Anders to assist in the operation. Cummings was to do the trucking work and Anders the dirt work. Graden G. Lisenby, who was employed by Anders, was electrocuted while riding as a passenger on a truck hauling a part of a rig into the drilling site. Suit has been brought by Lisenby's widow, for herself and her children, against Chartor Oil Company, Tibbits Drilling Company, Cummings Trucking Company, Southwest Mississippi Electric Power Association, and their insurers, for damages resulting from the electrocution, which occurred on December 16, 1960.

Chartor, a non-resident partnership, has moved to quash the return of the service of summons since it was made upon the Secretary of State of Louisiana. Louisiana has provided in Article 1263 of the LSA–Code of Civil Procedure that service on a partnership is to be made on a partner or to be made on an employee if a partner cannot be found. Since there is no provision for substituted service upon the Secretary of State, the motion to quash must be, and is, granted.

The Fidelity and Casualty Company of New York, the insurer of Chartor, in moving for summary judgment, contends that its insured, Chartor, is a statutory employer, secondarily liable under the Louisiana Workmen's Compensation Law [1] and therefore immune to a suit in tort. A motion for dismissal for failure to state a claim by Tibbits and its insurer, Employers Casualty Company, likewise relies on the exemption against tort liability given contractors in the ascending line by Louisiana. Plaintiffs, however, strongly contend that the Mississippi Compensation Law, which plaintiffs allege provides no exemption for these defendants,[2] is the exclusive compensation remedy.

The controversy, as presented by these motions, stems partly from the question of whether the occurrence of the injury in Louisiana would, *per se*, give jurisdiction to a Louisiana forum in a workmen's compensation proceeding.[3] Even the fact that compensation has been paid under the laws of another state does not bar liability for compensation in Louisiana under the Louisiana Workmen's Compensation Act. Hunt v. Magnolia Petroleum Co., 10 So.2d 109 (La. App., 1942).

1. Dandridge v. Fidelity & Casualty Co. of New York, 192 So. 887 (La.App., 1939); LSA–R.S. 23:1032; Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852; Coal Operators Casualty Co. v. Fidelity & Casualty Co., 223 La. 794, 66 So.2d 852; Leslie v. Cities Service Refining Corp., 5 Cir., 252 F.2d 902; Bruce v. Travelers Insurance Co., 5 Cir., 266 F.2d 781.

2. See Mosley v. Jones, 224 Miss. 725, 80 So.2d 819 (1955).

3. If the contract had been a Louisiana contract, this clearly would have given Louisiana Courts jurisdiction. Ohlausen v. Sternberg Dredging Co., Inc., 218 La. 677, 50 So.2d 803 (1951).

In Johnson v. El Dorado Creosoting Company, 71 So.2d 613 (La.App., 1954), the Court said:

" * * * [I]t is urged that since only the injury or harm took place in Louisiana while Johnson was on a more or less temporary undertaking, this state does not have the paramount interest which is with the State of Arkansas.

"Appellant's contention is pitched upon the ruling in Bradford Electric Light Co. v. Clapper, 1932, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026, 82 A.L.R. 696, which assumed in effect, that the single factor, locus of injury, was not enough to permit assertion of coverage by a state, at least when the employee's presence in the state was only incidental and temporary. The cited case, however, has been substantially overruled by later federal cases and particularly Pacific Employers Insurance Company v. Independent Accident Commission, 1939, 306 U.S. 493, 59 S.Ct. 629, 633, 83 L.Ed. 940, wherein the court said:

" ' * * * few matters could be deemed more appropriately the concern of the state in which the injury occurs or more completely within its power * * * [than] the bodily safety and economic protection of employees injured within it.'

"We are of the opinion the ruling of Pacific Employers Insurance Company v. Independent Accident Commission, supra, is decisive. This view is further supported by Bagnel v. Springfield Sand & Tile Co., 1 Cir., 1944, 144 F.2d 65, wherein the Massachusetts law was applied in an action brought in that state by a New York employee temporarily at work in Massachusetts, and by the ruling in Magnolia Petroleum Company v. Hunt, 320 U.S. 430, 88 L.Ed. 149, 64 S.Ct. 208, 150 A.L.R. 413, upholding the right of the State of Texas, where the injury occurred, to adjudicate the case though the contract of employment was entered into in Louisiana.

"No Louisiana cases in point have been brought to our attention, nor has our research unearthed any. Counsel for claimant refer in their brief to McKane v. New Amsterdam Casualty Co., La.App., 1940, 199 So. 175, and Williams v. Travelers Insurance Company, La.App., 1944, 19 So.2d 586, but the facts of these cases are inapposite. We are in accord with the decree overruling the exceptions to jurisdiction ratione materiae and of no cause and of no right of action."

Here the record shows without dispute that, although the contract of employment was made in Mississippi, Lisenby lived in Louisiana, and performed a great deal of work for his employer, Anders, in this State. In fact, it shows that he worked for Anders here for a number of days in almost every month from the beginning of his employment, including 60 days in 1960.

Plaintiffs also contend that the motions should not be granted since suit could be maintained if the activity engaged in by Anders was not part of the trade, business, or occupation of these defendants. The record here shows without dispute that the dirt work being done by Anders was a necessary and integral part of the trade and business of Chartor and Tibbits.

Accordingly, the motions by Tibbits, Employers Casualty Company and the Fidelity and Casualty Company of New York are granted, and they are dismissed from the suit.

Southwestern Mississippi Electric Power Association and its insurer, Employers Mutual Insurance Company of Wisconsin, having filed affidavits and other evidence showing that the power line at the scene of the accident complied with the minimum vertical clearance recommendations of the National Electric Safety Code, moved for summary judg-

ment. Defendants, in contending that compliance with the code for minimum vertical clearance meets the standard of care required for electric power lines, rely principally upon Calton v. Louisiana Power & Light Company, 222 La. 1063, 64 So.2d 432 (1953). In approving the Court of Appeal's finding that there was no negligence on the part of the power company, the Supreme Court said:

"* * * The Court of Appeal, in a well-considered opinion wherein the facts are correctly stated and the issues clearly drawn, with a proper application of the law rejected these contentions, finding as a fact that the defendant's lines complied with all recognized standards of electrical construction, particularly those recommended by the National Bureau of Standards of the U. S. Department of Commerce, and *were at a proper height to safeguard against a contingency that could reasonably be foreseen or expected. * * *"* (Emphasis added.)

The Supreme Court approved the Court of Appeal's expression of the standard of care to be used by an electric company which was said to be:

"* * * * '* * * where the wires maintained by a company are designed to carry a strong and powerful current of electricity, so that persons coming in contact with them are certain to be seriously injured, if not killed, the law imposes upon the company the duty of exercising the utmost care and prudence consistent with the practical operation of its plant to prevent such injury; * * * The law is complied with when the company provides such a protection as will safely guard against any contingency that is reasonably to be anticipated. The company is not legally bound to safeguard against occurrences that cannot be reasonably expected or contemplated.' "[4]

Thomas v. Gulf States Utilities Co., La. App., 128 So.2d 323 (1961), cert. denied, is a later appellate decision in which the Court ruled that compliance with the minimum height provided in the National Electric Safety Code would not absolve an electric Company from liability in all .instances. In this case, the deceased was attempting to erect a television antenna over his trailer when it came into contact with the electric company's uninsulated high voltage line. The Court, noting that the contingency of a TV antenna being raised in a trailer park to a height greater than the minimum prescribed by the National Electric Safety Code could reasonably be anticipated, stated that it was the duty of the electric company to provide for the safety of the public.

■■ Considering the teachings of the Thomas and Calton decisions, it must be concluded that compliance with the recommendations of the National Electric Safety Code as to the minimum vertical clearance of the power line is not the sole criterion in determining whether the power company has safeguarded against all contingencies that could be reasonably expected. It is noted that in both Calton and Thomas the injured persons were aware of the dangerous potential of the lines. Here there remains a factual issue as to whether the power company reasonably should have foreseen that a single-wire high-voltage line might have been mistaken for a telephone line, and whether, considering the extensive drilling activities then taking place in the vicinity, additional precautions should have been taken. For these reasons, the motion for summary judgment by Southwestern and Employers Mutual is denied.

Cummings, the trucker, and his insurer, Zurich, filed a motion for summary judgment supported by affidavits tending to show that plaintiff's particular factual allegations of negligence were not well founded in fact. While notice pleading does not require itemization of

4. Calton v. Louisiana Power and Light Co., 56 So.2d 862 (La.App., 1952) aff'd 222 La. 1063, 64 So.2d 432 (1953).

874

detailed facts showing a defendant to be negligent, the plaintiff has amended her petition to show additional factual allegations of negligence which are not controverted by the affidavits of these defendants. Moreover, there is contained in the record the affidavit and sworn statement of W. C. Maxie to the effect that Cummings' truck driver, Turnage, could have —but did not—lower the gin pole so as to pass safely under the wire. The argument, advanced as an afterthought, that Lisenby was a borrowed employee of Cummings, is not valid because 1) the record shows that Lisenby voluntarily and spontaneously climbed the pole, and 2) there is no showing that either of Cummings' employees had the right to control, or did control, his actions; nor did they even ask him to do what he did. For these reasons, this motion for summary judgment is denied.