Bergan, J.
These two cases, argued together, occupy a common ground to test the jurisdiction of the New York Workmen’s Compensation Board where employment stems from another State hut where work is carried on in New York and the accident occurs here.
They involve, too, a consideration of the effect of Matter of Nashko v. Standard Water Proofing Co. (4 N Y 2d 199) on such a New York accident as well as the modified influence of the rule of Matter of Cameron v. Ellis Constr. Co. (252 N. Y. 394).
In Rhodes v. Mushroom Transp. the claimant is a resident of Pennsylvania; the employer a Pennsylvania corporation and the employment based in Williamsport, Pennsylvania. Claimant drove a truck regularly into New York to make deliveries and collections, where two thirds of his work activity was located. He was injured in New York on his way to the employer’s terminal at Olean and on a trip scheduled “Williamsport to Buffalo to Jamestown to Erie ”. The Workmen’s Compensation Board made an award which the Appellate Division has affirmed.
In Rutledge v. Kelly-Miller Bros, the employer ran a traveling circus based in Oklahoma and the claimant, who at the time of his injury at Auburn, New York, was acting as a guard at the circus, was a resident of Arkansas and was hired there by the *469 employer. The circus had come into New York on June 9, 1963 and performances were scheduled in New York until July 21, although appellants suggest that the circus was not here continuously during that entire period.
Claimant’s injury while the circus was performing at Auburn occurred June 28. He was attempting to prevent intruders from molesting animals. The Workmen’s Compensation Board, holding there was an accident within the jurisdiction of New York, made an award which the Appellate Division has affirmed.
Although the two landmark cases Cameron and Nashko each involved the jurisdiction of New York in out-of-State industrial accidents, the logic of the Cameron “ fixed place of employment ” test of New York jurisdiction of an out-of-State accident had been applied conversely to test whether New York should take jurisdiction of a New York accident.
Thus an argument is pursued by both employers as appellants here that Nashko, which greatly widened the criteria governing New York jurisdiction in an out-of-State industrial accident, had an obverse effect in New York in the present eases to enlarge the exclusive out-of-State nature of the employment and thus narrow the jurisdiction of New York.
Appellant Mushroom Transportation argues, for example, under Nashko both that ‘ ‘ there are just insufficient contacts with the State of New York to justify acceptance of jurisdiction by the State of New York” and under Cameron that claimant’s “ Avork in Nerv York State is always in transit ”. The consequence is suggested that if the Pennsylvania board would have jurisdiction under the Nashko criteria, New York would not have jurisdiction. A similar argument is made by employer-appellant Kelly-Miller that the “essential criteria” of Nashko “are simply not met ’ ’ in this record.
It seems necessary, then, first to examine conversely the effect of Nashko on the jurisdiction of the New York board over accidents occurring in New York from employments initiated elsewhere to see the conditions under which New York would take jurisdiction of an accident occurring in another State with control of the employment in New York.
The protean test laid down for the court by Lehman, J., in Matter of Cameron v. Ellis Constr. Co. (252 N. Y. 394, supra) was one of mobility of the work outside New York. If the work *470 was in a “ fixed place in another State ’’New York was “ concerned only remotely, if at all ’ ’ with it; but occasional ‘ ‘ transitory work outside of this State ” could be field work performed in tfie course of “ employment fiere ” (p. 398).
This pragmatic test fiad both strength, and weakness. It must be said in its favor that there was a rather considerable degree of objective certainty in it. It could be determined in most cases whether the worker moved around on the job in the foreign territory or whether he stayed in one place. As originally promulgated it had a logical enough basis.
It had the disadvantage of evolving into an unrealistic standard of what is or is not a New York employment and its judicial interpretation worked out some rather fine-spun distinctions (see, e.g., Matter of Baduski v. Gumpert Co., 277 App. Div. 591, 593-594, mot. for lv. to app. dsmd. 302 N. Y. 702).
But whatever its advantages or disadvantages it is demonstrable from the cases that jurisdictional determinations based on mobility were consistently applied in New York over a relatively long period.
Thus, in 1952 in Matter of Cradduck v. Hallen Co. (304 N. Y. 240) it was held that claimant, a resident of Pennsylvania who was paid by a New York corporation and who worked first in New York under the instructions of the New York employer and then was sent by it to Indiana where, on an iron construction job under the general supervision of the New York employer, he was injured, was not in a New York employment. The reason for the absence of New York jurisdiction, as Loüghraüst, Ch. J., noted, was that the employment “was not transitory but stationary” (p. 243). The Cameron test was here decisive.
Many cases illustrate the applicable scope of the rule. A traveling salesman working with mobility outside the State for a New York employer was deemed within the jurisdiction of the board (Matter of Roth v. Horn Co., 287 N. Y. 545; Matter of Flinn v. Remington Rand, 277 N. Y. 641; Matter of Wagoner v. Brown Mfg. Co., 274 N. Y. 593).
A similar decision was made as to a pilot flying from Massachusetts to New Jersey (Matter of Tallman v. Colonial Air Transp., 259 N. Y. 512). In Matter of Lewis v. Knappen Tippetts Abbett Eng. Co. (304 N. Y. 461) an engineer employed in New York to work in Israel was held to be engaged in a *471 New York employment, in part on the basis of the work being done “ at various places ” in the foreign territory (p. 466).
On the other facet of the rule, the “fixed employment ” test was consistently applied to deny jurisdiction to the New York board in out-of-State accidents. It was expressly followed, as we have seen, in Matter of Craddock v. Hallen Co. (304 N. Y. 240, supra) to the iron construction worker injured in Indiana.
It was followed similarly in such cases as Matter of Bagdalik v. Flexlume Corp. (281 N. Y. 858), where a New York employer hired claimant in Chicago to fix a sign there; Matter of Zeltoski v. Osborne Drilling Corp. (264 N. Y. 496), where claimant, hired in New York, was making test borings in Tennessee; Matter of Amaxis v. Vassilaros, Inc. (258 N. Y. 544), involving a painter hired in New York to work in New Jersey; Matter of Copeland v. Foundation Co. (256 N. Y. 568), where a policeman was hired by a New York employer to work at a particular place in Pennsylvania. See, also, Matter of Irizarry v. Zerega’s Sons (282 App. Div. 535). These decisions all were influenced by the rule of Cameron.
Since we are concerned in these present cases with relevant criteria which would affect the jurisdiction of the New York board over a New York accident, it is instructive to examine the reverse effect the Cameron rule had on New York accidents.
On the express authority of Cameron it was decided in Matter of Proper v. Polley (233 App. Div. 621, affd. 259 N. Y. 516) that a tool dresser on oil well machines, a resident of Pennsylvania working temporarily in New York for a Pennsylvania partnership, did not come within the jurisdiction of the New York board. A decision to the same effect was made in Matter of Whitmire v. Blaw-Knox Constr. Co. (263 N. Y. 675) in a case involving an employee for a Pennsylvania company who “ worked for his employer on the road ’ ’. This decision expressly followed Proper which, as it has been seen, rested on Cameron.
In Matter of Coyle v. Safeway Stores (281 App. Div. 933; mot. for lv. to app. den. 305 N. Y. 929), a California employer owned a chain of stores in New York which the claimant’s husband serviced with a truck coming from New Jersey. It was held in sustaining jurisdiction over a New York accident that the employer was doing business “at the fixed location ” of those *472 stores in New York with, which decedent’s work “was so chiefly and generally connected ” at “ those places ” in New York as to justify the board’s taking jurisdiction on the basis of the Cameron rule.
If the employment “ occasions the work-producing injury to be done at, and is confined to, definite location within this State ”, as Brewster, J., noted in Matter of Bauss v. Consolidated Chimney Co. (270 App. Div. 70, 73), “ then the place of the workman’s employment is located in this State
Thus, in Matter of Cafiero v. Ballantine & Sons (1 A D 2d 527, mot. for lv. to app. den. 2 N Y 2d 705), it was held that a New Jersey resident employed by a New Jersey brewery was working in a definite location in New York where delivery of the beer was exclusively made in New York. The term “ definite location ’ ’, as the court per Zeller, J., construed it, did not mean a particular street number, factory or building; it meant “ any particular area within this State ” (p. 529). Thus with some difficulty making the tests entirely logical, the court felt required to apply the rule of Cameron conversely to New York accidents.
In the basic concept of the Cameron tests as they had been evolved, Nashko made important changes. The employee in that case was working at a definite and fixed place in Perth Amboy, New Jersey, in steam cleaning a building in a housing project when he was killed in the course of employment. The employer was a New Jersey corporation which had a New York office and was owned by a stockholder who also controlled a New York corporation of the same name and engaged in the same kind of business.
Decedent, a New York resident, was hired in New York by both corporations to work either in New York or in New Jersey, but the last work he had done in the New York employment was in July, 1949, 10 months before the New Jersey accident in May, 1950. He boarded in New Jersey while the job was in progress and this was paid for by the employer and his wages were paid from New York. The single location job in New Jersey was the only work decedent did for either corporation during 1950.
In reversing the Appellate Division (3 A D 2d 963, 964), which held that there was, by the Cameron test, a New Jersey employment, the court, per Burke, J., noted that there is “no fixed, *473 invariable touchstone by which the presence or absence of jurisdiction in cases like the present one may be determined” (4 N Y 2d 199, 200). If there are “ sufficient significant contacts with this State ’ ’ so that “ it can reasonably be said that the employment is located here ” the New York Board has jurisdiction (p. 201). But “ at all times ” the determination of location “ is governed by the facts of the particular ease ”.
Thus, the objective criteria of Cameron, unsatisfactory and artificial as they had become, were replaced by a broader standard to apply jurisdiction in which the sufficiency of significant contacts with New York were to be measured by the particular facts of each ease (p. 201).
Under the record of Nashko it was held that the ownership in New York of stock of a foreign corporation and the hiring of a New York resident and his payment from New York amounted to a sufficient contact with New York to cover a foreign employment by a foreign corporation in a single place in a foreign State.
Although this decision eliminated some of the difficulties of rigidity with the Cameron rule, its elasticity implied difficulties of another kind which seem to have developed in trying to see under governing facts of each' particular case whether there are such “ significant contacts ” with New York to be able to say that the employment is “ located here ”.
Thus, in Matter of McMains v. Trans World Airlines (18 A D 2d 956, mot. for lv. to app. den. 13 N Y 2d 593), the employee, a pilot, had been hired in and was paid by the employer T. W. A. from Missouri and was assigned to Lufthansa, a German airline, where he became a supervisory pilot. He was killed in a flight for Lufthansa from Hamburg to Bio de Janeiro. The flight schedules of Lufthansa were made up in Hamburg and transmitted to its office in Idlewild in New York where decedent usually received them.
Upon the authority of Nashlco it was observed at the Appellate Division that “ [t]here is no hard and fast rule for determining jurisdiction applicable to all cases and since the employment “had substantial connection” with New York, the board had jurisdiction (p. 957).
If the same broad criteria are to be applied under Nashko in determining from the viewpoint of the foreign State that employ *474 ment is “in fact” located there, then conversely, as both appellants argue in these present cases, the New York jurisdiction will correspondingly be narrowed as to New York accidents ; for in Nashko, the other side of the coin was described, i.e., that if “ circumstances and elements indicate ” that the employment “is in fact located in another State” then the claimant “ is not protected by our statute ” (4 N Y 2d, p. 201).
Literally taken this would mean mutually exclusive jurisdictions, i.e., that New York would not take jurisdiction in a case where another State has sufficient contact with the employment in New York that, applying our rule there, the other State would be able to take jurisdiction.
This is, indeed, the full thrust of the argument advanced here by appellants in the present cases; and there can be little doubt that if the Nashko criteria were applied in Pennsylvania to the Mushroom Transportation employment and in Oklahoma to the Kelly & Miller Bros, employment, those States would be able to take jurisdiction.
We ought not apply a rule of mutually exclusive jurisdiction on the basis of the broad criteria of Nashko and deny jurisdiction here because under the same facts jurisdiction would be taken elsewhere. New York has a primary public interest in industrial accidents happening here and it may take jurisdiction when an industrial accident occurs here even though control of the work, payment of wages, and employment of the claimant all may have their roots elsewhere.
Our concern with safety in industry and the consequences of casualty in New York is a reflection of our domestic policy. (Cf. Pacific Ins. Co. v. Industrial Comm., 306 U. S. 493; Boyle v. G. & K. Trucking Co., 37 N. J. 104.) All industrial accidents occurring in New York fall literally within the scope of our statute.
The application of Nashko to deny jurisdiction over a New York accident in employment controlled from Indiana was rejected at the Appellate Division in Matter of Armstrong v. Aero Mayflower Tr. Co. (14 A.D 2d 958) and it was similarly rejected as to employment emanating from Florida in Matter of Herman v. Ringling Bros. Barnum & Bailey (10 A D 2d 745).
The jurisdiction taken by the board in the two present cases ought not be overridden. Appropriate directions may be made *475 by the board to prevent a duplicated liability for compensation case by case if there be acceptance also of jurisdiction by another State.
The order in each case should be affirmed, with costs to respondents filing briefs in this court.