### AUSTIN *v.* W. BIDDLE WALKER COMPANY.

OPINION OF THE COURT.

1. WORKMEN'S COMPENSATION—JURISDICTION OF WORKMEN'S COMPENSATION COMMISSION.

The Michigan workmen's compensation appeal board has jurisdiction to apply the Michigan workmen's compensation statute to award compensation, even though the employee was not a resident of Michigan at time of injury and his work was not performed in Michigan, if the employment contract was made in Michigan (CL 1948, § 413.19).

DISSENTING OPINION.

LEVIN, J.

2. WORKMEN'S COMPENSATION—COVERAGE—RESIDENCE.

*An employee is not automatically disqualified for coverage under the Michigan workmen's compensation act by the fact that he is not a Michigan resident.*

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 58 Am Jur, Workmen's Compensation §§ 68–72; Extraterritorial operation of Workmen's Compensation Statutes; conflict of laws. 3 ALR 1351, supplemented in 18 ALR 292, 28 ALR 1345, 35 ALR 1414, 45 ALR 1234, 59 ALR 735, 82 ALR 709, 90 ALR 119.

[5] 58 Am Jur, Workmen's Compensation § 45.

[6] 58 Am Jur, Workmen's Compensation §§ 36, 37.

3. SAME—COVERAGE—PLACE OF MAKING EMPLOYMENT CONTRACT.
   The fact that an employment contract was made in Michigan does not automatically entitle an employee to coverage under the Michigan workmen's compensation act.

4. SAME—JURISDICTION OF APPEAL BOARD—OUT-OF-STATE INJURIES.
   The facts that the contract of hire was made in this state and that the workmen's compensation appeal board has jurisdiction over a controversy arising out of injuries to an employee hired pursuant to such contract and which injury was suffered without the territorial limits of the State, does not require an award of compensation without regard to other circumstances of the employment relationship (CL 1948, § 413.19).

5. SAME—COVERAGE AS PART OF EMPLOYMENT CONTRACT.
   Coverage of employees under workmen's compensation act should no longer be regarded as part of their employment contract, since coverage of Michigan employers under the Michigan workmen's compensation statute has become compulsory rather than voluntary (CL 1948, § 411.2).

6. SAME—EXTRATERRITORIAL APPLICATION OF ACT.
   The extraterritorial applicability of the Michigan workmen's compensation act should be developed case by case, based upon an appraisal of all the relevant facts and circumstances in the particular case unrestricted by any attempt to devise a test good for all cases.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 1 November 7, 1967, at Detroit. (Docket No. 3,165.) Decided April 26, 1968. Leave to appeal denied August 1, 1968. See 381 Mich 769.

Application by Clarence Austin against W. Biddle Walker Company and Liberty Mutual Insurance Company for adjustment of his workmen's compensation claim. Additional compensation granted. Defendant appeals. Affirmed.

*A. Leon Peck,* for plaintiff.

*Lacey & Jones* (*E. R. Whinham, Jr.,* of counsel), for defendant.

J. H. GILLIS, J. The sole issue on this appeal is whether the Michigan workmen's compensation appeal board has jurisdiction over a nonresident claimant who was injured while working in Kentucky under a Michigan contract of hire.

Clarence Austin, the claimant and plaintiff herein, was hired by defendant, W. Biddle Walker Company, in Ecorse, Michigan. After plaintiff had worked a short time at Kalamazoo, Michigan, defendant-employer sent him to a job site in Louisville, Kentucky. On December 31, 1962, while in the course of his employment with the company, plaintiff fell from a construction scaffold and was injured.

The parties are in agreement that plaintiff was at all relevant times a Kentucky resident, maintaining his home with his wife and children in Wickliffe, Kentucky. There is also no dispute that plaintiff applied for, and was receiving benefits under the Kentucky workmen's compensation act.

In November, 1963, plaintiff claimed benefits under the Michigan workmen's compensation act and filed an application for hearing and adjustment of claim with the Michigan workmen's compensation department. The referee dismissed the application for lack of jurisdiction on the basis that claimant was a nonresident and the injury occurred out of State. The workmen's compensation appeal board reversed the jurisdictional ruling on the basis that under the Michigan act the claimant need only have been injured while employed under a Michigan contract of hire. From the award of compensation benefits by the appeal board,[1] the employer and com-

[1] As one might expect, the Michigan benefits are higher than those recoverable in Kentucky. The Michigan benefits amounted to $45 per week as opposed to $38 per week in Kentucky; in addition there are higher medical benefits in Michigan. Benefits were awarded under

pensation carrier have appealed to this Court.

Part 3, § 19, of the Michigan workmen's compensation act provides:

"The industrial accident board[2] shall have jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this state, in those cases where the injured employee is a resident of this state at the time of the injury, and the contract of hire was made in this state, and any such employee or his dependents shall be entitled to the compensation or death benefits provided by this act." CL 1948, § 413.19 (Stat Ann 1960 Rev § 17.193).

Although this provision on its face requires residency as a condition of benefits under the Michigan act, it has not been so construed by the Michigan Supreme Court. Plaintiff cites *Roberts* v. *I. X. L. Glass Corp.* (1932), 259 Mich 644, as compelling a decision that residency is not a requirement so long as the employment contract was made in Michigan.

Defendants contend that *Roberts* is no longer the law because of its inapplicability to our present statute or because of having been *sub silentio* overruled by 3 later decisions of our Supreme Court: *Cline* v. *Byrne Doors, Inc.* (1949), 324 Mich 540; *Daniels* v. *Trailer Transport Company* (1950), 327 Mich 525; and *Wagner* v. *LaSalle Foundry Company* (1956), 345 Mich 185.

*Roberts* v. *I. X. L. Glass Corp., supra,* is squarely on point. The jurisdiction provision in *Roberts* (CL

---

the Michigan act from December 31, 1962. By agreement, defendants were entitled to a setoff for past payments under the Kentucky act. The difference at the time of the award was $2,482.76 plus interest from the dates the individual payments were due.

[2] The workmen's compensation appeal board is the successor administrative agency to the appellate jurisdiction of the industrial accident board. See CLS 1961, § 408.2 (Stat Ann 1960 Rev § 17.6 [2]).

1929, § 8458) is identical to our present provision. The opinion is prefaced with:

"The sole question presented is whether an employee whose contract for employment is entered into in Michigan with a resident employer who is under the workmen's compensation act  \*  \*  \*  for services to be rendered wholly outside of the State of Michigan is within the terms of the act so that, if otherwise entitled thereto, he may be awarded compensation notwithstanding the accident occurred in another State and that the employee was at no time a resident of Michigan." *Roberts, supra,* pp 644, 645.

The Court held the act applicable. The jurisdiction provision was, in the Court's opinion, in conflict with the then-existent part 1, § 6 of the act which set out the scope and effect of the compensation provisions. At the time *Roberts* was decided, the act was not mandatory on Michigan employers, but rather gave them an election whether or not to be bound under its terms. The conditions of electing to be bound under the act were spelled out in part 1, § 6:

"Such election on the part of the employers mentioned  \*  \*  \*  shall be made by filing  \*  \*  \*  a written statement to the effect that such employer accepts the provisions of this act *for all his businesses*  \*  \*  \*  *in which he may engage and all employees he may employ while he remains under this act.*" (Emphasis supplied.)

Defendants argue that the fact that the act is now mandatory necessitates a contrary result to that reached in *Roberts.* It is true that the Court placed great reliance on the above section 6, but it does not seem to us that the emphasis or decision was placed on the contractual nature of the act. Rather the

Court based its decision on the portion of section 6 which used the phrase "all employees."

In 1921 when the jurisdictional provision was added to the act, the legislature also re-enacted part 1, § 7 (CL 1929, § 8413) which then provided:

"The term 'employee' as used in this act shall be construed to mean: * * * Every person in the service of another under any contract of hire, express or implied."

The Court held, in construing these various provisions (259 Mich 644, 648, 649):

"If the 1921 amendment were to be construed in accordance with appellants' contention it would work a radical change in the scope and effect of the act. We cannot conceive of the legislature intending or attempting to accomplish such a result inferentially, as it were, by including the single quoted phrase in section 19 of part 3. If the legislature intended to so amend the statute, clearly it required a change in section 6 of part 1, above quoted, which is in no way referred to or changed by the amendatory act. That the legislature did not intend by the 1921 amendment [addition of the jurisdictional provision] to modify the act in the manner appellants assert is almost conclusively disclosed by the fact that the amendatory act covers section 7 of part 1; and as above stated again re-enacted that portion which defines as an employee 'every person in the service of another under any contract of hire.' This re-enacted portion of section 7 is in full harmony with the original provision in section 6 that the employer's election to come under the act is an election 'to cover and protect *all employees* employed in any and all * * * businesses' of the employer. While it must be conceded that there is some conflict between the various quoted provisions of the act as amended, we are satisfied that the reasonable construction and the one necessary to carry out the legislative intent appearing from

the whole act is that it covers nonresident as well
as resident employees in those cases wherein the
contract of employment is entered into in this State
with a resident employer."

Section 6 of part 1 has since been repealed (PA
1943, No 245) and the act made obligatory upon
employers, CL 1948, § 411.2 (Stat Ann 1960 Rev
§ 17.142). But the provisions of part 1, § 7, as above
quoted have been continued: CL 1948, § 411.7(2),
as amended by PA 1955, No 122 (Stat Ann 1960
Rev § 17.147[2]).

The same inconsistency facing the Court in the
*Roberts Case* still exists in the act. Section 7 makes
the act applicable to "every person in the service of
another, under any contract of hire." Section 19
still purports to limit the jurisdiction to "cases
where the injured employee is a resident of this
state at the time of the injury." Even though the
act is now obligatory, the same substantive scope
as to employees covered is contained in the act.
There being no further legislative intent indicated,
*Roberts,* if not overruled, is controlling.

Cases cited by defendants do not vitiate the pre-
cise holding of *Roberts.* In *Cline* v. *Byrne Doors,
Inc., supra,* the plaintiff-employee was a resident of
this State who was working in Florida when the
injury occurred. The two questions before the
Court were whether the contract of hire was made
in this State and if acceptance of Florida benefits
barred claimant's right to seek benefits under the
Michigan act.

*Daniels* v. *Trailer Transport Co., supra,* does not
decide the issue in point. There plaintiff was a
resident of Illinois, the contract of hire was made
in Texas and the injury was in Texas. Although
the first headnote seems on point for defendants,
that headnote was merely repeating the statute

quoted by the Court (§ 19) and not the decision of the Court.

The Court does refer to *Cline* (p 530) as being "the only decision in Michigan after the effective date of PA 1943, No 245 (compulsory act) which considers the extraterritorial operation of the workmen's compensation act." But, any change in prior law because of the compulsory nature of the amended act was not a matter of decision by the Court. *Cline* was cited for the proposition that the right to compensation depends on whether the contract for hire was made in this State, but the earlier *Roberts* decision is authority for the same proposition (259 Mich 644, 649). And although the Court in *Daniels* referred to the noncontractual nature of the act, the manner of becoming obligated does not appear to change the result reached in *Roberts* as to the requirement of a Michigan contract of hire, and the Court's language indicating such significance does not appear to be material to the decision. *Daniels* and *Cline* are both wholly consistent with *Roberts* insofar as the actual issues decided in those cases.

In *Wagner* v. *LaSalle Foundry Co., supra,* the claimant was employed by an Ohio employer under a contract of hire made in that State. The decision does not refer to *Roberts* nor is it inconsistent therewith.

This case is governed by *Roberts, supra,* and under the rule of that case we find the decision of the workmen's compensation appeal board to be correct.

Affirmed. Costs to appellee.

QUINN, J., concurred with J. H. GILLIS, J.

LEVIN, P. J. (*dissenting*). *Roberts* v. *I. X. L. Glass Corp.* (1932), 259 Mich 644, held that, since the con-

tract of employment there had been entered into in Michigan, Michigan's workmen's compensation act covered the out-of-state injury even though it was intended that the services be rendered without the State and the employee was not a resident of Michigan.

Those are essentially the facts in the case here for decision. Nevertheless, because I do not think the place of contracting has the importance once attached to it, I cannot agree that decision here is controlled by *Roberts*.

However, while not controlling, *Roberts* cannot be ignored. I agree that Clarence Austin was not automatically disqualified for coverage under the Michigan act because he was not a Michigan resident. It is now 35 years since *Roberts* was decided. Whatever may have been the legislative intention at the time of adoption of the residency requirement (CL 1948, § 413.19 [Stat Ann 1960 Rev § 17.193]), it would be inappropriate at this late date to attempt to breathe new life into a statutory provision which was aborted so long ago.[1] If the legislature desired to insist on a residency requirement,[2] it could have done so at any time within the last 35 years; it was inferentially invited to do so in *Roberts*, p 649.

I do not think—and this is the area of disagreement—*Roberts* governs what foreign injuries are subject to the act or, to be more specific, that merely because Austin's contract of employment was entered into in Michigan he is automatically entitled to the protection of our act without regard to the other circumstances of the employment relationship.

[1] I do not read the dictum in *Daniels v. Trailer Transport Co.* (1950), 327 Mich 525, 530, heavily relied on by the appellant, concerning part 3, § 19 of the act (CL 1948, § 413.19 [Stat Ann 1960 Rev § 17.193]), as a declaration that *Roberts* has been overruled.

[2] Few States have and enforce a local residency requirement as a condition of foreign-injury coverage. 2 Larsen, Workmen's Compensation Law, § 87.11, p 376, § 87.60, pp 394, 396.

First, part 3, § 19 of the act does not mandate that all hired under contracts made in this State who suffer injuries are *ipso facto* entitled to compensation. Rather it says the board shall have *"jurisdiction* over all controversies arising out of injuries suffered without the territorial limits of this State, in those cases where the injured employee is a resident of this State at the time of the injury, and the contract of hire was made in this State." CL 1948, § 413.19 (Stat Ann 1960 Rev § 17.193) (Emphasis supplied.) From the fact of "jurisdiction" to award compensation it does not follow necessarily that the board *must* award compensation without regard to the other circumstances of the employment relationship.

Second, *Roberts* should not be read today as eliminating only the residency requirement of part 3, § 19. *Roberts* may properly be viewed as having eliminated section 19 altogether with the result that the board and the appellate courts of this State, unrestricted by a truncated section 19, are free to evolve sensible rules of law concerning the extraterritorial application of Michigan's act.

Place of contracting was put forth as the governing criterion in *Crane* v. *Leonard, Crossette & Riley* (1921), 214 Mich 218, the first case which considered the extraterritorial application of Michigan's workmen's compensation act. The employee was hired in Michigan, his services to be performed within and without the State, and he met his death in Illinois during the course of his employment. The question was whether our act applied to an injury that ocurred outside the State, *i.e.*, whether the act applied extraterritorially at all. The Court rejected cases from other jurisdictions limiting their acts to local injuries. The Court expressed no policy requiring preference for the place of contracting over the place of injury, but rather seemed

impelled to its result because coverage was optional, not compulsory, at the time. Hence, said the Court, the relationship was contractual (p 228) :

"The authorities, and particularly the later ones, lead irresistibly to the conclusion that where the act is an optional one, as is ours, the relations are *contractual* and the provisions of the act become a part of the contract of employment." (Emphasis supplied.)

Since rights under the act were contractual, they (p 231) "accompanied the employee wherever he went within the ambit of his employment." The following year, the Court explained *Crane* "held that as our compensation act was voluntary *the relation was one of contract,* and that the provisions of the act must be read into the contract between the employer and employee." (Emphasis supplied.) *Hulswit* v. *Escanaba Manufacturing Co.* (1922), 218 Mich 331, 333. On that basis, the *Hulswit* Court held that our act covered a case where "the services contracted for [in Michigan] were [as in *Roberts*] entirely performed outside of the State."

Then came *Roberts.*[3] The *Roberts* Court was confronted by the conflict between the (1) amendatory language of section 19 adopted in 1921 (PA 1921, No 173) limiting the board's jurisdiction of controversies arising out of injuries suffered outside Michigan to those cases where the contract of hire was made within Michigan *and* the employee was a resident of this State, and (2) its holdings, also dating from 1921, adopting the place of contracting as determinative. In eliminating section 19's residency requirement the Court stressed that its enforcement would work "a radical change in the scope and effect

[3] In the interim the court, in reliance on § 19, *Crane* and *Hulswit,* allowed recovery to one who apparently came within the literal wording of § 19. *Klettke* v. *C. & J. Commercial Driveaway* (1930), 250 Mich 454.

of the act." (p 648)    There had not as yet been any change in the optional nature of the coverage; the Court, understandably, continued to focus on its underlying premise that the "relations are contractual," and to see the matter in terms of protecting the employee wherever he might go in performance of the contract. When coverage was entirely optional, treating the matter as one of *quid pro quo* must have appeared no more than fair.

The inadequacy of the contractual theory became apparent in *Thiede* v. *G. D. Searle & Co.* (1936), 278 Mich 108, where the Court was confronted by a claim in respect to a deceased employee resident of this State whose dependent widow also resided in this State. The employer asserted that the employment contract was entered into in Illinois and, in reliance on the Court's prior holdings that made the acts extraterritorially turn on whether the employment contract was made in Michigan, argued that the Michigan act did not apply. The employment contract was to be performed exclusively in Michigan and the employee lost his life in Michigan in the course of employment. In this case, still governed by the old act (before the 1943 amendments making the act compulsory), the Court declared (p 111):

"The deceased was under a contract of hire and by reason of his employer's election to become subject to the act, he, the employee, became covered and protected by the act. It therefore makes no difference *where* the contract of employment was made." (Emphasis by the Court.)

While the *Thiede* Court continued to speak in contractual terms, I do not suppose it intended to cover under our act employees everywhere without regard to the presence or absence of Michigan contacts. The Court ignored place of contracting. On the

basis of the obviously significant Michigan contacts, the Court simply held the act applied. A short time later, in *Conover* v. *Rust Engineering Co.* (1937), 279 Mich 16, on the authority of *Thiede,* the Court declared the Michigan act applied where the contract was entered into in Pennsylvania, the services were to be performed in different States and Canada, the employee and his family resided in Colorado, and the employee lost his life in Michigan in the course of the employment.

Thus, prior to the change from optional to compulsory coverage, the Court had completed the circle from complete rejection of place of injury to complete adoption of the place of injury, provided that place was Michigan.[4] In doing so, the Court abandoned place-of-contracting as the sole approach to the complex question of the act's extraterritoriality.[5] And it thereby widened the inquiry beyond that considered, or necessary to decision, in *Roberts.*

The 1943 amendments to the act making coverage compulsory also eliminated language emphasized in *Roberts, Thiede* and *Conover,* declaring that an electing employer agrees "to cover and protect *all* employees in any and *all* of his businesses." PA 1943, No 245 (CL 1929, § 8412). (Emphasis supplied.) Thereupon, it ceased to be a matter of choice and contract.

In *Daniels* v. *Trailer Transport Co.* (1950), 327 Mich 525, the Court moved further away from the contract approach, holding that even though the

---

[4] Recently the Court rejected the claim that the full faith and credit clause of the United States Constitution prevents an Indiana resident employed in Indiana by an Indiana employer, injured during employment in Michigan, from recovering under the Michigan act after an award had been made by Indiana. *Schenkel* v. *Towers Builders Company, Inc.* (1968), 380 Mich 492.

[5] See, *e. g., Crider* v. *Zurich Insurance Company* (1965), 380 US 39 (85 S Ct 769, 13 L Ed 2d 641).

parties contracted to be bound by the Michigan act, the Michigan act did not apply.[6]

The majority opinion here stresses the continuing inclusion in the act of the following definition of "employee": "Every person in the service of another, under any contract of hire, express or implied." CL 1948, § 411.7 (Stat Ann 1960 Rev § 17-.147).[7] The argument proves too much. Every person under every contract of hire with an employer, even a Michigan employer, is not covered by the Michigan act. Nor do I think every person under every contract of hire made in Michigan is covered. It would obviously be unsound to hold, for example, that a nonresident injured out-of-state who was hired for work to be performed entirely without the State for a foreign based employer is necessarily covered by the Michigan act merely because the employment was agreed upon in Michigan.[8] Larsen criticizes the cases which let the matter turn wholly on the place of contracting, and speaks of:

"the unrealistic character of the place-of-contract test when construed to depend upon the sheer formality of being physically present in a particular

---

[6] The employer's home office was in Michigan; the employee was a resident of Illinois; the contract of hire was made in Texas and the injury suffered in ·Tennessee. The Court ruled that (p 531) "the responsibilities and benefits provided under the act cannot be enlarged or diminished by agreement of the parties."

[7] That the language of the act must be adapted to its purpose, see *Crane v. Leonard, Crossette & Riley, supra,* p 230, where the court held Michigan's act covered foreign injuries despite the act's requirements that hearing be held at the locality where the injury occurred and a certified copy of the award be presented to the circuit court for the county in which the accident occurred.

[8] Place of contracting is surely a relevant factor, but to make it determinative in every case might well deny due process in a particular case. Compare *Alaska Packers Association v. Industrial Accident Commission of the State of California* (1935), 294 US 532, 543 (55 S Ct 518, 79 L Ed 1044), holding constitutional the application of California's statute to injury suffered by a Mexican migrant worker hired in California for work in Alaska on the ground that under .the "special circumstances" there disclosed the statute, *as applied,* did not lack a rational basis or involve any arbitrary or unreasonable exercise of State power.

geographical subdivision when a signature is
scrawled or a word spoken into a telephone mouth-
piece. There is nothing in this technicality of rele-
vance to the choice of an appropriate statute for
practical compensation purposes." 2 Larsen, Work-
men's Compensation Law, § 87.34, p 389.

Larsen advocates[9] the approach enunciated in
1930 by the New York court of appeals[10] and the
Wisconsin supreme court.[11]  The New York and
Wisconsin test, explains Larsen, looks for the situs
of the employment relationship.  If that relation-
ship has a local situs, the local act applies to out-
of-state injuries unless the situs of the relationship
becomes fixed in a foreign State.  Recently the New
York court of appeals in *Rutledge* v. *Kelly and Mil-
ler Bros. Circus* (1966), 18 NY2d 464 (223 NE2d
334), reviewed its earlier holding in *Cameron* v.
*Ellis Construction Co.* (1930), 252 NY 394 (169
NE 622) and the cases following *Cameron*.  A dis-
tinction had developed between work which had a
fixed place in another State [coverage ordinarily
denied] and out-of-state work which was only tran-
sitory [coverage allowed].  Applied rigidly, the
*Cameron* test had been used to deny compensation
where there existed a significant number of con-
tacts with New York but where the court thought
employment "fixed" outside the State.  In *Nashko*

---

9 2 Larsen, Workmen's Compensation Law, § 87.42, p 390.
10 *Cameron* v. *Ellis Construction Co., supra.*  See, also, *Nashko* v.
*Standard Water Proofing Company, supra.*
11 *Val Blatz Brewing Co.* (1930), 201 Wis 474 (230 NW 622).
See, also, *McKesson-Fuller-Morrison Co.* v. *Industrial Commission*
(1933), 212 Wis 507 (250 NW 396); *Interstate Power Co.* v. *In-
dustrial Commission* (1931) 203 Wis 466 (234 NW 889).  In *Fay* v.
*Industrial Commission* (1941), 100 Utah 542 (114 P2d 508, 511) the
Utah Supreme Court construed the statutory requirement that an
employee be "hired in this State" to mean that the "status of em-
ployer and employee [be] maintained and localized in this State,"
and in *House* v. *State Industrial Accident Commission* (1941), 167 Or
257 (117 P2d 611), the Oregon supreme court held the site-of-the-
employment-relationship test required the employee to perform a
"substantial part of his work" within the State.

v. *Standard Water Proofing Company* (1938), 4 NY
2d 199 (173 NYS2d 565, 149 NE2d 859), the *Cam-
eron* test of fixed employment situs was expanded
to include out-of-state injuries where there were
"significant contacts" with New York. This "sig-
nificant contacts" test proved fairly serviceable for
out-of-state injury cases but, when applied obverse-
ly, it could exclude New York jurisdiction of acci-
dents occurring within its borders. Literally, the
*Cameron-Nashko* test required that where another
State had more "significant contacts" with the em-
ployment relationship than did New York, although
the injury was in New York, New York should not
take jurisdiction. That was the specific problem
facing the *Rutledge* court. It held the *Cameron-
Nashko* test should not be applied to result in the
mutually exclusive jurisdiction of one State over
another, and judged the case before it according to
its view of the extent of New York's interest therein.

The lesson of experience, our own and that of our
sister States, is that any attempt to establish a talis-
man good for all cases will ultimately prove unequal
to the task of fairly deciding all cases. The varied
factual situations that arise do not lend themselves
to codification. The simplistic place-of-contracting
test, like any test that exalts one element to the
exclusion of all others, is unworkable as a guideline
to decision in all cases.[12]

In eliminating the optional nature of coverage
under the act and making coverage compulsory, and

---

[12] A one- or two-element test has been tried, and not happily so,
in many jurisdictions. The various elements relied upon as deter-
minative have included, sometimes in varying combinations, place of
contract, place of injury, place where the employee does most of his
work, place of residence of employee, place of employer's residence
[which might be construed as place of home office, place where the
greater part of the business is done, place of executive hiring office,
et cetera] and place of the employer-employee relationship. See
cases collected in Annotation: Extraterritorial Operation of Work-
men's Compensation Act, Conflict of Laws, 82 ALR 709, and, sup-
plementing that annotation, 90 ALR 119.

in eliminating the former statutory language that an electing employer agrees "to cover and protect all employees employed in any and all of his businesses", the legislature eliminated the fundamental bases of the *Crane, Hulswit,* and *Roberts* holdings. The early decisions of the Michigan Supreme Court construing the act before coverage thereunder became compulsory do not confine the inquiry to location of the place of contracting. The workmen's compensation appeal board and the appellate courts are free to develop case-by-case the scope of the extraterritorial applicability of Michigan's act.

In this case the workmen's compensation appeal board found:

"The evidence before us establishes that the contract of employment entered into between plaintiff and defendant was consummated when plaintiff contacted Jack Vaden in Ecorse, Michigan. Plaintiff was then assigned as a regular employee on the Upjohn project in Kalamazoo for about two weeks. While still in Kalamazoo, he was contacted by Mr. Haynes who assigned him as a foreman of the out-of-state crews, and he has since that date been so assigned to various jobs in other States. It was during the course of such employment that the injury here in question occurred. It is not disputed that the injury arose out of and in the course of his employment. The proofs before us having established that the contract of hire was entered into in the state of Michigan, our jurisdiction lies foursquare within the rules expressed by the Supreme Court in the claim of *Roberts* v. *I. X. L. Glass Corp.,* 259 Mich 644."

It is apparent that the appeal board considered place of contracting determinative. In so doing, an erroneous rule of law was, in my opinion, applied. I would remand to the appeal board for further findings concerning the employment relationship

and other relevant criteria, and for a redetermination thereon whether the injuries are covered by Michigan's act. The parties should have an opportunity to offer additional proofs.