## Kathryn Martin v. Furman Lumber Company and Utica Mutual Insurance Company

[346 A.2d 640]

No. 193-74

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed October 7, 1975

*James C. Gallagher, Esq.,* of *Downs, Rachlin & Martin,* St. Johnsbury, for Plaintiff.

2

*Lawrence Miller, Esq.*, Rutland, for Defendants.

**Smith, J.** The facts of this case are simple and undisputed. Dwight F. Martin resided in Island Pond, Vermont, with his wife and child. He was hired under a contract made at his employer's, Furman Lumber Company's, principal place of business in Boston, Massachusetts. The corporation at no time maintained a place of business in Vermont, and Martin's was the only employment touching this State. On July 11, 1972, while operating a Furman Lumber Company truck, Martin was killed as a result of an accident in Hardwick, Vermont. The accident arose out of and was in the course of Martin's employment with the lumber company. Utica Mutual Insurance Company, as carrier for the Furman Lumber Company, provides workmen's compensation coverage for all Furman Lumber employees, including Martin, under the Massachusetts Workmen's Compensation Act. The insurance carrier has been and is ready to provide benefits to the widow of Martin under the Massachusetts Act.

A notice of injury and claim for compensation, seeking the application of the Vermont Workmen's Compensation Act, was served on Furman Lumber Company and filed with the Commissioner of the Department of Labor and Industry. The matter was submitted to the Commissioner on an agreed statement of facts, previously recited. The Commissioner denied plaintiff's application. He first ruled that the Vermont Act did not apply to employers with fewer than two employees within the State at the time of injury, and he noted that Furman Lumber Company had not voluntarily come under the provisions. The Commissioner additionally found that residence alone was not a sufficient basis for the application of a workmen's compensation statute. The Commissioner finally ruled that the place of the contract of hiring was usually determinative of the statute to be applied and the remedies to be afforded. An appeal was taken by plaintiff, and a statement of the questions of law to be reviewed was certified to this Court.

The first question presented is whether the Commissioner was in error when he held that the language of 21 V.S.A. § 616, which required a minimum of two employees before an employer was covered by the Workmen's Compensation Act,

excluded workers employed by Furman Lumber Company outside of Vermont. It was the interpretation of the Commissioner that the Act, as it then existed, required a minimum of two employees be employed within the State of Vermont, although it was not disputed that Furman had a number of employees outside of Vermont.

Prior to 1967, 21 V.S.A. § 616 required a minimum of five employees before an employer was within the workmen's compensation provisions. In 1973 this section was amended generally and the minimum-number requirement no longer applies so that this question will not again be presented. However, the 1967 amendment was in effect at the time of the fatal injury to Martin. At that time the pertinent provision of 21 V.S.A. § 616 read, "The provisions of this chapter shall apply to all public and industrial employment, as hereinbefore defined, but shall not apply to employers who regularly employ but two employees or less." We note that the statute did not specifically state that such employees had to be in Vermont.

We believe that if the Legislature had intended that the Act be applicable only to employers with more than two employees in Vermont, it would have so stated. The limit, we believe, set a minimum employment requirement to bring an employer under the Act, and served to exclude such small employers.

While the appellees have cited two cases in support of the Commissioner's holding that only in-state employees can be counted under the Act, *Sweeney's Dependents* v. *Cape Fear Wood Corp.*, 237 S.C. 471, 118 S.E.2d 70 (1961), and *Mooney* v. *Stainless*, 388 F.2d 126 (6th Cir. 1967), we do not find them persuasive on the question or in line with the factual situation here.

The majority of jurisdictions, which have discussed out-of-state employees, have held that all employees of the same business, wherever situated, must be counted in arriving at the statutory minimum. *Nowlin* v. *Lee*, 203 So.2d 493 (Miss. 1967); *Baldwin-Hill Company* v. *Lockner*, 359 P.2d 228 (Okla. 1961); and *McFall* v. *Barton-Manfield Co.*, 33 Mo. 110, 61 S.W.2d 911 (1933). A recent Michigan case, *Rodwell* v.

*Pro Football, Inc.,* 45 Mich. App. 406, 206 N.W.2d 773 (1973), held that the provision of the Michigan Workmen's Compensation Act, which applied to all private employers who regularly employed three or more persons, was a de minimis requirement meant to exclude small employers.

> The same considerations apply to the question of whether out-of-state employees should be counted. Three states, Georgia, Kansas, and Virginia, expressly omit them from the count. As for the rest, the usual holding is that out-of-state employees are counted. Even under a same-business-or-establishment statute the result is the same, since businesses and establishments are no respecters of political lines drawn on maps.

1A A. Larson, Workmen's Compensation Law § 52.34 (1973). The Commissioner of Labor and Industry was in error in holding that the Furman Lumber Company had to have two or more employees in Vermont to come under the provisions of the Vermont Workmen's Compensation Act.

Having decided that Furman Lumber Company was an employer for purposes of the Vermont Workmen's Compensation Act, we now face the further jurisdictional question of whether the parties elected to come under the Act as then mandated by 21 V.S.A. §§ 612 and 613. Section 613 put the burden on the employer to avoid the Act. Under this section an employer could elect to stay without the provisions by filing with the Commissioner of Labor and Industry an employment contract which contained "an express statement in writing that the provisions of this chapter . . . are not intended to apply." If an employer did not file such a statement, the contract was presumed to have been made subject to the provisions of this chapter. The record before us does not indicate that Furman made such a filing, so we must presume that the contract of hiring of Martin impliedly contained the provisions of Vermont Workmen's Compensation Act.

Supporting our conclusion is the case of *DeGray* v. *Miller Brothers Construction Co.,* 106 Vt. 259, 173 A. 556 (1934):

> A person working under a contract of hire made in a foreign state does not become an employee under the pro-

visions of our act until he renders service for his employer in this State under such contract. Until then he is not an employee and the terms of the act do not affect him and he is not bound by it. But as soon as he renders service for his employer in this State under such contract, then the act enters and becomes a part of the contract. He is then bound by the provisions of the act and is entitled to a compensation under its provisions for an injury sustained in this jurisdiction while rendering service under the contract.

*Id.* at 274–75.

We are now confronted with the question of whether the Vermont Commissioner of Labor and Industry can apply the provisions of the Vermont Workmen's Compensation Act; that is, exercise his jurisdiction, without violating full faith and credit mandates.

Vermont's only delineation of the full faith and credit implications of an in-state accident to an employee under an out-of-state contract is *DeGray* v. *Miller, supra,* 106 Vt. at 276.

[W]hen an employee is injured in this State while working under a contract made in another state, we will ordinarily, upon the principles of comity, or under the full faith and credit clause of the federal constitution (*Bradford Electric Light Co.* v. *Clapper,* 286 U.S. 145, 76 L.ed. 1026, 52 Sup. Ct. 571, 82 A.L.R. 696), decline to take jurisdiction, and leave the parties to their remedies in the jurisdiction where the contract of employment was made, if it does not conflict with the law and public policy of this State.

We believe this language is only dictum, since the decision ostensibly turned on the fact that appellant had previously received an award of compensation under the Connecticut provisions. *Id.* at 277.

As the quotation above illustrates, the *DeGray* Court relied on *Bradford Electric Co.* v. *Clapper* for its theory of full faith and credit requirements. In *Bradford,* application of New Hampshire law was disallowed because the state's only interest was as the location of injury. That interest was considered

casual, and, therefore, not sufficient for full faith and credit purposes. But, *DeGray* was written in 1934 shortly after *Bradford*. Since that date, there has been substantial development in the United States Supreme Court's delimitation of problems occurring between application of workmen's compensation statutes and full faith and credit requirements which erodes the *Bradford* approach.

*Alaska Packers Association* v. *Industrial Accident Commission,* 294 U.S. 532 (1935) set forth the legitimate-public-interest test. As both the place of hiring and the place of recuperation, California had sufficient interest to apply its own provisions. *Id.* at 542. As the forum state, California had the right to apply its own statutes, and it was noted that "[o]ne who challenges that right, because of the force given to a conflicting statute of another state by the full faith and credit clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum." *Id.* at 547–48.

In a later Supreme Court case, *Pacific Employers Insurance Co.* v. *Industrial Accident Commission,* 306 U.S. 493 (1939), California's only interest was as the place of injury, whereas Massachusetts was the site of contract, employer, and employee residence. California was granted the right to apply its workmen's compensation laws, and thereby the interest of the place of injury was fixed as sufficient for full faith and credit purposes:

> Although Massachusetts has an interest in safeguarding the compensation of Massachusetts employees while temporarily abroad in the course of their employment, and may adopt that policy for itself, that could hardly be thought to support an application of the full faith and credit clause which would override the constitutional authority of another state to legislate for the bodily safety and economic protection of employees injured within it. Few matters could be deemed more appropriately the concern of the state in which the injury occurs or more completely within its power.

*Id.* at 503.

*Carroll* v. *Lanza,* 349 U.S. 408, 412 (1955), accordingly noted:

> [I]n these personal injury cases the State where the injury occurs need not be a vassal to the home State and allow only that remedy which the home State has marked as the exclusive one. The State of the forum also has interests to serve and to protect.

*Id.* at 412.

*Crider* v. *Zurich Insurance Co.,* 380 U.S. 39 (1965), extended the analysis of various state interests to include the employee's residence:

> The State where the employee lives and where he was injured has a large and considerable interest in the event. . . . The State where the employee lives has perhaps even a larger concern, for it is there that he is expected to return; and it is on his community that the impact of the injury is apt to be most keenly felt.

*Id.* at 41.

Sister states have also confronted this full faith and credit problem. Basically, modern delineations conclude that the state of injury and residence has sufficient interest in the controversy to apply its own provisions in lieu of the employer's state or the law of the state in which the contract was made. *Lisenby* v. *Tibbits,* 225 F.Supp. 870 (N.D.La. 1963); *Rutledge* v. *Kelley & Miller Bros. Circus,* 18 N.Y.2d 464, 223 N.E.2d 334 (1966); *In re Hillenbrand,* 80 Ida. 468, 333 P.2d 456 (1958); *In re Lavoie,* 334 Mass. 403, 135 N.E.2d 750 (1956).

3 A. Larson, *supra,* at § 86.00 perhaps best summarizes the present state of law:

> Any state having a more-than-casual interest in a compensable injury may apply its compensation act to that injury without violating its constitutional duty to give full faith and credit to the compensation statutes of other states also having an interest in the injury. Among the facts which, if occurring within the state, will give

rise to such a legitimate interest are: the making of the contract, the occurrence of the injury, the existence of the employment relation, and possibly also the residence of the employee and the localization of the employer's business.

The *Restatement of Conflicts* also offers the same theory:

A state of the United States may consistently with the requirements of due process award relief to a person under its workmen's compensation statute, if:

(a) the person is injured in the State . . . .

*Restatement (Second) of Conflict of Laws* § 181 (1971).

In the instant case the accident in which the decedent was killed in the course of his employment occurred in Vermont. Not only was Vermont the place of residence of the decedent, but it was, and is, the place of residence of his widow and child. The record makes clear that the benefits to which such survivors would be entitled are far more generous under Vermont's Workmen's Compensation law than they would be under the Massachusetts Act.

Because of the residence of the survivors in this State, it is obvious that Vermont has a strong public policy interest in their future welfare and support, which, if not adequately provided, could impose a burden upon Vermont taxpayers and social agencies. This fact alone might not be sufficient reason for the Commissioner to exercise his authority to make an award under the Vermont Act. But added to this circumstance we have the occurrence of the accident within this State, while the decedent was employed herein.

*The order of the Commissioner is reversed. The cause is remanded with instructions to enter appropriate award to the claimant against Furman Lumber Company under applicable Vermont law, and to determine the liability, if any, of Utica Mutual Insurance Company. Plaintiff is awarded reasonable attorney fees in this Court, against Furman Lumber Company, to be determined by a commissioner unless stipulated to by the parties prior to November 1, 1975.*